Emma Wilson, Administratrix of Estate of John F. Wilson, Deceased, Appellee, v. Terminal Railroad Association of St. Louis, Appellant.

Term No. 47,015.

Opinion filed January 26, 1948. Released for publication February 26, 1948.

KRAMER, CAMPBELL, COSTELLO & WIECHERT and NORMAN J. GUNDLACH, all of East St. Louis, for appellant.

HAY & FLANAGAN, of St. Louis, Mo. and LOUIS BEASLEY, of East St. Louis, for appellee.

Mr. Justice Culbertson delivered the opinion of the court.

This is an appeal from a judgment of the city court of the City of East St. Louis, based on a verdict of a jury, in favor of appellee, Emma Wilson, administratrix of the estate of John F. Wilson, deceased (hereinafter called plaintiff), and as against Terminal Railroad Association of St. Louis, appellant (hereinafter called defendant). The action was brought by John F. Wilson, now deceased, as plaintiff, under the provisions of the Federal Employers' Liability Act. The administratrix has been substituted as plaintiff in this cause after verdict, but before judgment.

The pleadings and evidence in this cause disclose that the deceased, John F. Wilson, was an engineer employed by the trustees of the Mobile & Ohio Railroad Company, and that on July 12, 1940, he was operating a gasoline electric engine and the car attached thereto, over the tracks of the Terminal Railroad Association of St. Louis between St. Louis, Missouri and East St. Louis, and across the Eads bridge, and that he ran into and struck the rear end of a stopped freight train on the viaduct leading from the Eads bridge to the east side of the Mississippi river. The complaint in this cause was filed and the action maintained only as against defendant, Terminal Railroad Association of St. Louis, and in the complaint the allegation is made that defendant, Terminal Railroad Association had an agreement with the trustees of said Mobile & Ohio Railroad Company for the purpose of permitting the trustees to operate trains, including the passenger train on which deceased was an engineer, over the tracks of the defendant, and that by reason thereof the plaintiff was an employee of the defendant, Terminal Railroad Association while so operating the engine of the Mobile & Ohio Railroad Company over defendant's tracks on said date.

Various acts of negligence were charged on part of the defendant, which were substantially to the effect that defendant improperly caused a train to stop or to be stopped ahead of the train on which deceased was engineer and on the same track·on which deceased was traveling when defendant knew, or in the exercise of ordinary care on the defendant's part, would have known, that deceased's train was being operated on said track and without giving deceased any warning of the presence of such train. There was also an allegation to the effect that defendant's flagman had failed to go back immediately with flagman's signals a sufficient distance to insure full protection as required by one of defendant's rules, when by doing so the collision could have been avoided. There is also an allegation of a failure to display red lights on the train, as provided by defendant's rules.

The evidence developed through testimony in the court below was to the effect that the trains of the Mobile & Ohio running over the tracks of the Terminal Railroad would be handled by directions and control of employees of the Terminal Railroad; that the deceased Wilson had no control over direction of the movement, or the track over which he would move, but had only to watch the signals and be governed accordingly. The movements of freight trains were not controlled by time table and there would be nothing to indicate to the deceased Wilson that there was going to be a freight train on the track ahead of him. It was shown that the employee of defendant, Terminal Railroad, as tower director, would know what trains were on the track, but that the deceased engineer Wilson would not know, and that all he, the deceased, had to do was to follow the green light and directions given him by the tower directors. The evidence showed that the green light was given to Wilson at the last point at which there was any signal between stations, even

though the employee of defendant, in one of the towers, could have ascertained that the freight train was standing there on the track that the east-bound passenger train operated by the deceased Wilson was using. The deceased testified that he did not get any signal or warning or information of any kind that there was a freight train in front of him; that the tracks curved, and about the time he reached the curve he saw a freight train standing right on the curve. The deceased testified that there was no red light or red signal of any kind and that when he saw the train he stopped as quickly as he could by applying the emergency brake.

The deceased sustained certain injuries as a result of the collision and had not worked since the time of the accident. There was evidence to the effect that the peculiar type of nervousness which the deceased suffered from was produced by trauma, or injury, and that it was a permanent condition. There had been evidence to the effect that the deceased had been a healthy man before the time of the accident. On the basis of such evidence the jury had returned a verdict in favor of the plaintiff, in the sum of $4,000. The motions for judgment notwithstanding the verdict, and in the alternative, for a new trial, were filed by defendant, as well as motions for directed verdict at the close of plaintiff's evidence and at the close of all the evidence.

From the standpoint of the evidentiary phase of this case there was clear support for the verdict of the jury, in view of the fact that defendant had control of the operation of the signals and of the other facts and circumstances recited in the statement of facts in this opinion. This court cannot, on appeal, invade the jury's function and judge the credibility of the witnesses and substitute its judgment for that of the jury (*Lavender v. Kurn,* 327 U. S. 645, 66 S. Ct. 740; *Ellis v. Union Pac. R. Co.,* 329 U. S. 649). The

question of negligence on part of deceased was one for the jury, and under the facts, did not justify a direction of a verdict by the court below, or a reversal on such ground on appeal to this court (*Armstrong v. Chicago & W. I. R. Co.,* 350 Ill. 426, 432; *Brant v. Chicago & A. R. Co.,* 294 Ill. 606, 617; *Goodman v. Chicago, B. & Q. R. Co.,* 289 Ill. App. 320, 328). There was, therefore, no error in failing to direct a verdict at the close of plaintiff's evidence, or of all the evidence.

The contention is made in this court that the court below erred in denying defendant leave to file an additional answer setting up certain operating rules, numbers 301 and 308. A written motion for new trial had been filed, which did not set forth such alleged error. It will be presumed in this court to have been waived since it was not set out in the written motion made by the defendant for a new trial (*Erikson v. Ward,* 266 Ill. 259, 266; *Minnis v. Friend,* 360 Ill. 328, 336).

There is also objection made by defendant to the giving by the court below of an instruction which referred to the allegations of the complaint. The instruction did not refer the jury to the complaint, but told the jury that if they believed from a preponderance of the evidence that deceased was injured while employed, etc., as alleged in the complaint, etc., then they should find defendant guilty. It did not leave the jury to determine the materiality of the issues, but the court expressly instructed the jury as to each individual fact alleged in the complaint and included all of the elements required to be proved in a case under the Federal Employers' Liability Act. Instructions of this character have been frequently approved by the courts of this State (*Central Ry. Co. v. Bannister,* 195 Ill. 48, 49; *United States Brewing Co. v. Stoltenberg,* 211 Ill. 531, 533; *Schneiderman v. Interstate Transit Lines, Inc.,* 331 Ill. App. 143, 153).

Another problem raised by defendant, however, requires careful thought and consideration. It is contended by the defendant that the deceased was not an "employee" under the terms of the Federal Employers' Liability Act, and that by reason thereof there can be no recovery by plaintiff as against Terminal Railroad Association, which was the owner of the tracks over which deceased was operating his train. Defendant directs our attention to a case in which no final opinion has yet been rendered, which is being considered by the Supreme Court of a neighboring State. In that case the court had a situation which was substantially similar to the facts as presented in the instant case, with reference to the defendant, Terminal Railroad Association, in considering the liability of the Kansas City Terminal Railway Company. It is stated (as is contended here) that since the terminal simply owned the tracks through the terminal yards, upon which the train of another railroad was being operated pursuant to a written contract of lease, that the fact that the Missouri statute provided for a joint liability of both companies was not conclusive. Defendant in that case, in giving consideration to the many Missouri and U. S. Supreme Court cases points out, as does the defendant in this cause, that the employment referred to under the Federal Employers' Liability Act is a conventional relationship, and that unless such relationship of employer and employee exists in truth and in fact the Federal Act cannot apply to it, and that the case of *North Carolina R. Co. v. Zachary*, 232 U. S. 248, and other cases purporting to follow the *Zachary* case, do not compel such holding. The defendant in the Missouri case, points out that the underlying basic reason for the enactment of the Federal Employers' Liability Act was to secure uniformity of both the right and remedy in interstate commerce cases, without regard to whether the action is brought in any State or Fed-

eral court, and that the State and Federal courts were given concurrent jurisdiction by the Federal Act, and that the right of removal was withheld. It was pointed out that Congress did enact a dominate statute that withdrew all injuries to railroad employees in interstate commerce from the operation of the varying State laws and put all such actions, under a National law of uniform operation in all States. It is concluded in that case that Congress pre-empted the entire field of liability of carriers and that the rights and liabilities of parties to an action under the Federal Employers' Liability Act must be determined by the provisions of that Act. The defendant then goes on to conclude that all State laws with respect thereto, both common law and statutory law, give way where they enlarge or diminish or conflict with the Federal Act. It was the defendant's interpretation that the Missouri lessor-lessee statute is such a State law in that it was an instrumentality by which it was sought to fasten liability upon the lessee railroad under the Federal Act, and that the Federal Act has made the Act applicable only to employees of railroads sought to be so charged with such liability. The defendant then concluded that the plaintiff in that action sought to use the lessor-lessee statute to "piece out" and enlarge the scope and application of the Federal Act to assert and maintain the action as against the lessor railroad. It was the conclusion of the defendant that that could not be done and that only an actual conventional employee should come under the Act. The defendant there seeks to distinguish the *Zachary* case (*supra*). The defendant states that in that case Zachary's intestate, an employee of Southern Railroad, was killed by the negligence of Southern Railroad. Zachary sued North Carolina Railroad, which owned the line upon which the Southern was operating. The North Carolina Railroad had leased all its property to Southern, including all its tracks and other

property. The defendant concludes that the *Zachary* case does not rule that an employee of a lessor railroad automatically becomes an employee of the lessee railroad for the purposes of the Federal Act, and the defendant then concludes that even though the Federal Act is remedial and to be liberally construed that it was the plain Congressional intention to employ it only where the condition of master and servant actually exists.

The Illinois Supreme Court has had occasion to give consideration to the problem involved in lessor-lessee operations in the case of *Armstrong v. Chicago & W. I. R. Co., supra.* In that case the administratrix of the deceased brought suit against both the lessor and lessee railroad. The court, in giving consideration to the case points out that (page 431), "Par. 61 of chapter 114 of Cahill's Revised Statutes, provides, in part, that all railroad companies incorporated or organized under the laws of this State shall have power to make contracts and arrangements with each other and with railroad corporations of other States for leasing or running their roads or any part thereof. The principle is thoroughly established that where an injury results from the negligent or unlawful operation of a railroad, whether by the owner or by another whom the owner authorizes or permits to use its tracks, both railroad companies are liable to respond in damages to the party injured. (*Chicago and Erie Railroad Co. v. Meech,* 163 Ill. 305; *West Chicago Street Railroad Co. v. Horne,* 197 id. 250; *Chicago and Grand Trunk Railway Co. v. Hart,* 209 id. 414; *Chicago and Eastern Illinois Railroad Co. v. Schmitz,* 211 id. 446.) The lessor and lessee are not only jointly and severally liable to the general public but the rule embraces employees of the lessee (*Chicago and Grand Trunk Railway Co. v. Hart, supra*), and although the relation of lessor and lessee is not shown to exist, the rule applies to cases where the owner permits another rail-

road to use its tracks (*Chicago and Eastern Illinois Railroad Co. v. Schmitz, supra.*)" We therefore have a precedent in the State of Illinois, which we believe is conclusive on the question of liability, and which disagrees on principle with the contentions made in the *Missouri* case, which we have discussed in this opinion. The Illinois case is controlling and we do not believe there is a logical basis for distinction of the *Armstrong* case, under the facts and the law.

A contention is made by the defendant that since the Terminal Railroad is required by law to permit other railroads to use its facilities that it, the Terminal Railroad, should not be construed to be in the same position as were the Railroads in the *Armstrong* case, where there was apparently a voluntary operating agreement. We do not believe that such distinction is sound. Under the statute referred to in the *Armstrong* case (1947 Ill. Rev. Stat., ch. 114, par. 43 [Jones Ill. Stats. Ann. 114.070]), both a lessor and lessee railroad company are liable to respond in damages to a party injured. The circumstances that a Terminal Railroad such as the defendant in this case, is required to permit other railroads to use its facilities (*United States v. Terminal R. R. Ass'n Co. of St. Louis,* 224 U. S. 383), does not relieve it of the obligations imposed by the Illinois statute referred to, nor does it furnish a basis for distinction from other railroads who have entered into similar leases or operating agreements, in absence of such compelling statute. In the language of the *Armstrong* case, we believe that it was the intention of the legislature to make both the lessor and the lessee jointly and severally liable to the general public, and although the relationship of lessor and lessee is not shown to exist, the rule would apply to cases where the owner permits another railroad to use its tracks. There is ample support for the position taken by the Illinois Supreme Court in other decisions of the U. S. Supreme Court, and of

the Federal court (*North Carolina R. Co. v. Zachary, supra; Lavender v. Kurn, supra; Schaffer v. Pennsylvania R. Co.,* 101 F. 2d 369).

■■ To construe the Federal Employers' Act in the narrow manner contended for by defendant, and apparently adopted in the Missouri Supreme Court, we do not believe is either consistent with the language of the Federal Act, nor of the congressional intent, particularly in view of the fact that the defendant, Terminal Railroad, effectively directed the movement of the deceased Wilson over its tracks. We believe that the Federal Act being remedial, should actually be liberally construed rather than simply giving lip service to such construction and adopting one which does not apply such principle. We find no justification for the conclusion that Congress intended the Act to apply only where the formal relationship of master and servant exists and believe that the Illinois Supreme Court in the *Armstrong* case adopted a conclusion which is proper under the law and the facts. In any event, this court feels that it is compelled to adhere to the rule adopted in the *Armstrong* case and must, accordingly, sustain the judgment of the court below. The judgment of the city court of the City of East St. Louis will, therefore, be affirmed.

*Judgment affirmed.*

BARTLEY and SMITH, JJ., concur.