Jackie Grider, Plaintiff-Appellant, v. Chicago, Burlington and Quincy Railroad Company, a Corporation, Peoria and Pekin Union Railway Company, a Corporation, and Lipsett Steel Products, Inc., a Corporation.

Gen. No. 64-73.

Third District.

June 7, 1965.

Elmo E. Koos, of Peoria, for appellant.

Davis, Morgan & Witherell, of Peoria, for Chicago, Burlington & Quincy Railroad Company, appellee. Miller, Westervelt & Johnson, of Peoria, for Peoria & Pekin Union Ry. Co., appellee. Smith & Church, of Peoria (Lester Berry Smith, of counsel), for Lipsett Steel Products, Inc., appellee.

CORYN, J.
Plaintiff, Jackie Grider, perfected this appeal from an order entering summary judgment in favor of each of the three defendants, Chicago, Burlington and

Quincy Railroad Company (C. B. & Q. Co.), Peoria & Pekin Union Railway Company (P. & P. Ry.), and Lipsett Steel Products, Inc. (Lipsett). In each of the three counts of his complaint, plaintiff asked $900,000 damages against the several defendants for injuries sustained when the wheels of a loaded gondola-type freight car passed over and amputated his legs. His third amended complaint alleged that for these injuries he had a cause of action against each defendant under the provisions of the Federal Employer's Liability Act (F. E. L. A.), 45 USC, §§ 51–60, said defendants having negligently caused his injury while he was employed by each of them as a switchman. The motions for summary judgment of the railroad defendants asserted that plaintiff was never an employee of either, that this fact issue is not genuinely disputed, that such employment status is essential to plaintiff's cause, and that said defendants are therefore entitled to summary judgment. The motions of Lipsett averred that it was never a common carrier by railroad, was never engaged as a common carrier in interstate commerce, that no triable issue exists with respect to this matter, that its status as a common carrier would be an essential element to plaintiff's cause against it, and that Lipsett is therefore entitled to summary judgment. Affidavits of various representatives of the several defendants, and excerpts from plaintiff's discovery deposition were attached in support of the several motions of the defendants. Plaintiff filed a counteraffidavit.

The deposition, affidavits and counteraffidavit show essential agreement between the parties here as to the evidentiary facts. It is not disputed that an employment relationship between plaintiff and the railroad is an essential element of any right of recovery in plaintiff against these defendants under the provisions of the F. E. L. A. It is also agreed that plaintiff must establish defendant Lipsett's status as a common car-

rier by railroad, and engaged as such in interstate commerce, in order to sustain his cause against this defendant. It is plaintiff's contention, however, that the facts in the record establish, as a matter of law, that Lipsett assumed the status of a common carrier by railroad, and was engaged as such in interstate commerce, when it undertook a "nondelegable operational activity" of the railroad defendants by completing the delivery of cars loaded with freight, one of which had moved across state lines, from a point where they had been spotted by said carriers, to the final destination for unloading at Lipsett's dock. Plaintiff further contends that the facts also establish that he became, as a matter of law, the employee of said railroads when he was required to and did perform duties which these defendants could not lawfully delegate. He argues, accordingly, that summary judgments should not have been entered for each of the defendants.

The gondola-type car which inflicted the plaintiff's injuries originated at Eola, Illinois, was consigned to Lipsett at Bartonsville, Illinois, and was routed over the lines of C. B. & Q. Co. to Peoria. At Peoria this car was delivered by C. B. & Q. Co., on November 30, 1958, to the P. & P. Ry. yards, and was then carried by P. & P. Ry. over its line and was placed or spotted by it on a track designated by Lipsett in its agreement with the carrier as the point of delivery. The car in question was spotted as the first car in a cut of four, one of which had originated in Iowa. The delivery track was located on property which, though owned by Keystone Steel & Wire Corporation (Keystone), was then under lease to Lipsett. The Lipsett yards abutted the Keystone premises and the leased Keystone track led to Lipsett's unloading dock. The injury occurred on these leased premises on December 1, 1958, while plaintiff, in company with other Lipsett employees, under the direction of Lipsett manage-

225

ment, and with Lipsett's switch engine, was moving the cut of cars to the unloading dock at Lipsett's plant. Plaintiff was hired by Lipsett approximately two months preceding this incident to work as a switchman in the regular routine of moving railroad cars spotted by the railroads on the leased Lipsett track, into the Lipsett unloading docks. The leased track was the place where the railroads always made delivery to Lipsett. Plaintiff was paid exclusively by Lipsett, and received all his instructions, according to his own deposition, "from some fellow employee of Lipsett." He never hired to or applied for employment with the railroad defendants, never received wages from either, and never received directions from either. On December 1, 1958, plaintiff had punched his Lipsett time card at 7:20 a. m. and had not punched out at the time of the accident. Lipsett did not at any time direct plaintiff to work under the supervision of or with any but Lipsett personnel, nor did plaintiff do so. Plaintiff received a workmen's compensation award for the injuries involved here, upon his application to the Illinois Industrial Commission, in which he asserted that the injuries were sustained in the course of and arose out of his employment with Lipsett. Lipsett and the defendant railroads had a contract by which the railroads were engaged to deliver freight cars to a receiving point designated by Lipsett. Under the agreement between Lipsett and the defendant railroads, the latter were paid only for the delivery to the leased Lipsett track. Lipsett owned a few pieces of rolling stock, including a switch engine and a system of trackage entirely within its own yards, and it moved railway cars only within the confines of its own property or that leased from Keystone. None of its equipment was used elsewhere, or for any purpose, other than the movement of its own materials within its own plant for its own manufacturing

226

purposes. Lipsett is not licensed or chartered as a common carrier, does not transport goods of others, issues no bills of lading, and receives no compensation for the use of any of its facilities.

On the basis of the foregoing facts, none of which are disputed, and by application of the principle set forth in Pipal v. Grand Trunk Western Ry. Co., 341 Ill 320, 173 NE 372, plaintiff argues that the interstate character of the cut of cars in question, one of which had moved from Iowa, was not interrupted by their stoppage or spotting on the Lipsett leased track, as these cars had not reached their point of unloading at the Lipsett freight dock. Thus he reasons that the cars were moving in interstate commerce when being so moved by Lipsett, and consequently were being moved under the charter power of the interstate carriers, C. B. & Q. and P. & P. Ry. Lipsett, therefore, undertook the duty of the interstate carriers, according to plaintiff's rationale, and assumed, as a matter of law, the status of one. He then contends that as the employee of a carrier (i. e., Lipsett) performing the charter duties of the other carriers (C. B. & Q. Co. and P. & P. Ry.), he may recover from the latter. For the proposition that an employee of one carrier, which is in the performance of the charter duties of another carrier, may recover from the latter, plaintiff cites Chicago & G. T. Ry. Co. v. Hart, 209 Ill 414, 70 NE 654; Wabash St. L. & P. Ry. Co. v. Peyton, 106 Ill 534; Suburban R. R. Co. v. Balkwill, 195 Ill 535, 63 NE 389; and Wilson v. Terminal Railroad Ass'n of St. Louis, 333 Ill App 256, 77 NE2d 429.

We think the fallacy of plaintiff's argument arises from his assumption, unsupported by any fact in this record, that because Lipsett's final destination for the cars in question was its own unloading dock, that this place of unloading was, by law, the final destination also for the carrier defendants, and that it was there-

fore the non-delegable charter duty of said carriers to deliver to said unloading dock rather than to the place agreed upon by contract with the consignee. The Pipal case, supra, upon which plaintiff relies for this conclusion, does not sustain this theory. In that case, the unloading of the cars was, in fact, a part of the carrier's duty. Plaintiff there, as the employee of the defendant railroad, was injured while unloading railroad ties from a railroad car parked on a siding track. The ties were to be used in construction or repair of defendant's track. The temporary stoppage on a siding before the completion of this duty of unloading was therefore held not to be an interruption in the interstate character of the shipment. In the case at bar, it is an undisputed fact that the contract between the carriers and Lipsett specifically contemplated that the former's duties with respect to delivery of freight to Lipsett were terminated when the cars would be spotted on the consignee's leased track. The movement of the freight from this point by Lipsett, upon its own premises, and by its own equipment, and with its own employees, for its own manufacturing purposes, and totally out of the presence, and without the assistance of the railroads, as the facts here indicate to be the case, does not reasonably support a conclusion that such movement was in the exercise of the charter powers of an interstate railroad carrier. Feran v. Illinois Cent. R. Co., 293 F2d 487. The other cases cited here by plaintiff also have no application to the facts presented here.

We conclude that the ruling of the Circuit Court of Peoria County was the only result warranted by this record, and that its order entering summary judgment for the defendants was therefore proper and must be affirmed.

Affirmed.

ALLOY, P. J. and STOUDER, J., concur.