(No. 13998.—Reversed and remanded.)

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* THEODORE BOUDERIOYNI, Plaintiff in Error.

*Opinion filed October 22, 1921.*

1. CRIMINAL LAW—*when plea of misnomer in an indictment is subject to demurrer.* Great accuracy is required in pleas in abatement and if there is any failure to observe the strictest technicality they cannot be supported, and a plea of misnomer of the defendant in an indictment is subject to demurrer where it omits to state the term at which it is filed, admits that the person pleading is the person against whom the indictment was returned and is not verified by affidavit.

2. SAME—*judge's certificate in bill of exceptions is conclusive.* The trial judge's certificate in the bill of exceptions as to what takes place in his presence is conclusive, and where the judge, upon his own recollection that the defendant was arraigned and entered a plea of not guilty, causes such plea to be entered at the trial and denies a motion to correct the record, the record as certified by the clerk must be accepted as true.

3. SAME—*when statement of judge is improper as interpreting a witness' testimony.* It is a question for the jury whether certain language of a witness is capable of a particular interpretation, and where a statement of a witness speaking imperfect English is of doubtful meaning, it is not proper for the judge, in the presence of the jury, to state his own construction of the language and by sustaining objection prevent counsel for the defendant from giving the witness an opportunity to explain.

4. SAME—*when evidence of offer to dismiss a prosecution for stipulated sum is admissible.* In a prosecution for taking indecent liberties with a child, where the father of the prosecuting witness has testified that the defendant endeavored to settle the prosecution, defendant's counsel should be permitted to introduce evidence

that said witness offered to dismiss the prosecution if the defendant would pay him $200, as such testimony tends to show the motive and interest of the witness and affects his credibility, especially where he has testified to admissions which he said were made by the defendant.

WRIT OF ERROR to the Criminal Court of Cook county; the Hon. THOMAS TAYLOR, JR., Judge, presiding.

STEDMAN, SOELKE & JOHNSON, and JAMES N. LORENZ, for plaintiff in error.

EDWARD J. BRUNDAGE, Attorney General, ROBERT E. CROWE, State's Attorney, and FLOYD E. BRITTON, (HENRY T. CHACE, JR., and EDWARD E. WILSON, of counsel,) for the People.

Mr. JUSTICE DUNN delivered the opinion of the court:

The grand jury at the November term, 1920, of the criminal court of Cook county returned an indictment against Theodore Bouderioyni for taking indecent liberties with James Moran, a twelve-year-old boy. At the January term, 1921, the plaintiff in error filed a plea in these words: "And now comes Theodore Boudouris, (against whom the People of the State of Illinois have caused the said indictment to be returned by the name of Theodore Bouderioyni,) in his own proper person, and by Stedman, Soelke & Johnson, his attorneys, and says that he is named and called Theodore Boudouris and by that name and that surname has always hitherto been named and called, without this, that he, the said Theodore Boudouris, now is or ever was named or called by the name of Theodore Bouderioyni, as by the said indictment is supposed; and this he, the said Theodore Boudouris, is ready to verify, wherefore he prays judgment that the said indictment may be quashed and that he, the said Theodore Boudouris, may be discharged," etc. Upon the court's attention being called to this plea by the plaintiff in error he entered an order of his own motion

299—7

directing that the plea be overruled for the reason that the names stated in the plea and indictment were *idem sonans.* The reason given for overruling the plea was insufficient, for the names have no more the same sound than hawk and handsaw; but the plea was subject to a demurrer because it omitted to state the term at which it was filed, and it admitted that the person pleading was the person against whom the indictment was returned, and it was not verified by affidavit. Great accuracy is required in filing pleas in abatement, and if there is any failure to observe the strict-- est technicality they cannot be supported. *Davids* v. *People,* 182 Ill. 176.

It is assigned for error and argued that the plaintiff in error was not arraigned and did not plead. The record shows that immediately after the overruling of his plea in abatement he was arraigned and entered a plea of not guilty. In settling the bill of exceptions the counsel for the plaintiff in error introduced evidence before the judge to show that the statement in the record was incorrect and that no arraignment or plea appeared upon the record or the minute book of the clerk during the progress of the trial or before the close of the evidence, but that upon counsel's moving to exclude from the jury all the evidence introduced on the trial on the ground that there was no issue for the jury to try, there having been no arraignment, a memorandum was then made by the clerk on his minute book showing that the defendant was arraigned and entered a plea of not guilty. The counsel for the plaintiff in error then entered a motion to correct the record of January 25, in which appears the statement, "Plea of not guilty entered to the indictment," by striking out of the order of that date the words, "Plea of not guilty entered to the indictment," but the court denied the motion.

It appears from the bill of exceptions that at the close of the evidence the counsel for the plaintiff in error moved to exclude from the jury all the evidence on the ground that

there was no issue for the jury to try, the defendant not having been arraigned. The court, on the hearing of the motion to exclude the evidence, stated that he remembered distinctly that the clerk asked the defendant, under the instructions of the court, whether he pleaded not guilty, and that the answer came from the counsel or from the defendant that he did. This motion was heard in the judge's chambers, in the absence of the jury. The court asked if there was a plea of not guilty on record. The assistant State's attorney stepped into the court room and came back saying that there was not. The court said, "Well, it should be entered," and thereupon the assistant State's attorney again stepped into the court room and again returned into chambers and stated that a plea of not guilty was then on record, and the court said, "Well, that is all right," and overruled the defendant's motion to exclude the evidence. These facts appear from the bill of exceptions, and as to what takes place in the presence of the judge his certificate in the bill of exceptions is conclusive. The judge having, upon his own recollection that the defendant was arraigned and entered a plea of not guilty, caused the plea to be entered of record at the trial, and having denied a motion to correct that record, the record as certified by the clerk must be accepted as true.

The evidence as to the commission of the crime consisted of the testimony of the boy, James Moran, and the plaintiff in error. The plaintiff in error was employed by George Glenos as manager of a fruit store at 1327 East Fifty-fifth street, in the city of Chicago, and Moran had been employed at the store by the plaintiff in error for two weeks before November 10, 1920, working after school and Saturdays, being paid $3 a week. Before that time another boy had been working there for some time and Moran was helping him. Two weeks before November 10, while the other boy was working there, $4.50 was missing from the cash drawer. The other boy quit and Moran took his place.

On November 10, which was Saturday, he worked at the store, went home for his supper and then returned to the store. He testified that about eight o'clock the plaintiff in error closed the door, turned out the lights, went to the back part of the store, called James back there and that the act complained of then occurred. The plaintiff in error denied the testimony of the boy in regard to what occurred and testified that he went to the back of the store to prepare some vegetables for the next day; that he heard the cash register ring, walked out, and as he came to the partition door saw the boy near the cash register handling the money and asked him what he was doing. James said he wanted to see how much money he took in that day. Plaintiff in error told him to go home and not come back but to come Saturday and get his pay; that that was all there was, and that he had told the boy before to keep away from the cash register and not to fool with it. The two were alone in the store. The plaintiff in error proved his good reputation.

The boy testified that he went home and told his mother about what occurred. When his father, Patrick Moran, came home, somewhat later in the evening, he came to the store and found the defendant and his employer had just closed the door. He asked them to let him in and said he wanted to talk to the defendant, who refused to let him in. His was the only other testimony in chief. He testified to an interview with the plaintiff in error later, in which he said that the plaintiff in error admitted the acts complained of.

During the progress of the trial George Glenos, who was the employer of the plaintiff in error, was introduced as a witness for the plaintiff in error, and complaint is made of a statement of the trial judge in the cross-examination of this witness, which it is claimed conveyed to the jury the impression that the court believed that the plaintiff in error had confessed that he did the act charged. Glenos was testifying about a conversation between the plaintiff in error and Patrick Moran at Moran's house, in which Moran told

the plaintiff in error: " 'If you was open the door the first night for me you never would be in trouble. Now I am sorry for you, because I find out a whole lot of question with you. You been in the army for two years and you lost your brother out of this trouble and I am sorry. But that's your own fault. If you was opened the door there never been no trouble.' 'Well,' Boudouris says, 'I never thought. I was afraid to open the door. There was you and another man outside and there was late, because you called me up and tell me to come to the door.' He called him and he closed the door. He call a yellow cab and get in a yellow cab and go away, and 'I will be down there to-morrow and find out what's the trouble,' and he done it, he says." Later in the examination counsel for the plaintiff in error asked Glenos:. "At that time did Mr. Boudouris say to this man that he was sorry for what he did,—that he had done something wrong?" The witness answered, "No," and the court, on objection of the defendant in error, struck the answer out. Counsel for the plaintiff in error proceeded with the examination, and objection being made a colloquy occurred, in which the court said, "I understood the witness to say, in answer to one question some time ago by Mr. Soelke, that 'he did it.' " Soelke said: "No, and I object to that remark before the jury and ask the court to caution the jury against being influenced by it." The court said, "It was a very curious answer that he gave to the question." He overruled the objection and counsel for the plaintiff in error excepted. Again, the court said: "He didn't use the expression that 'he did it;' he used the expression that 'he said he did it.' " The plaintiff in error and his employer were both Greeks, and while they were not examined through an interpreter they did not speak the English language with facility. Counsel for the plaintiff in error continued endeavoring to obtain an explanation of what the witness meant by the expression, "he did it." Objections were interposed and a discussion ensued, which was finally

closed by the statement of the court: "I have already ruled upon that. We have had our discussion upon that subject. It is ruled out. Now let's go on to something that is competent."

What Glenos meant by the expression, "and he done it, he says," is rather obscure, but apparently he meant to convey the idea that the plaintiff in error did go down there the next day and found out what the trouble was, but the court in the colloquy in connection with the examination of the witness stated that he understood the witness to say, in answer to one question by Soelke, that he did it, and when counsel for the plaintiff in error objected to the remark and asked the court to caution the jury about being influenced by it, the court, instead of ruling on the objection, said, "It was a very curious answer that he gave to the question," to which counsel replied, "You are misinterpreting it and I object to it," and the court overruled his objection. The counsel then called Glenos' attention to the expression "he did it," and asked, "Did what? What did you mean?" which was objected to, and the court said, "He didn't use the expression that 'he did it;' he used the expression that 'he said he did it,' " and to all the questions of the counsel for plaintiff in error intended to elucidate what the witness meant by his statement the court sustained objections. It is clear from the colloquy between court and counsel during this examination that the court thought that Glenos had stated that the plaintiff in error said that he had done the act with which he was charged, and that the court made the statement in the presence of the jury. Whether the language of the witness was capable of this interpretation or not was a question for the jury, and it was not proper for the court to make the statement giving his own construction to the language and not permit the counsel for the plaintiff in error to give the witness an opportunity to explain.

Patrick Moran testified that the plaintiff in error came to his house several times and endeavored to secure his aid

to end the prosecution which had been begun, and at one time offered to pay Moran for a day's work if he would go to a lawyer's office to sign some papers. The plaintiff in error offered testimony tending to show that Mr. and Mrs. Moran sent Mrs. Bernston to plaintiff in error offering to have the prosecution dismissed if plaintiff in error would pay $200 and that he went to Moran's house in response to this message. The court refused to admit this evidence. It should have been admitted, for while, as contended by the defendant in error, it did not tend to weaken the testimony of the boy it did tend to show the motive which actuated Patrick Moran. He testified to admissions which he said were made by the plaintiff in error, and his motive and interest were important as tending to affect his credibility as a witness. The evidence was directly contradictory and exceedingly close and the question of the credibility of the various witnesses was of vital importance to a fair decision of the issue.

Mrs. Moran was called in rebuttal and asked as to the condition of her son when he came to the house on November 10. Objection was made that it was not proper rebuttal and was not relevant. She testified that when James came in the door he was as pale as death; that she looked at his hands and they were all sticky and got dry from what the man left there on his hands. On motion of counsel for the plaintiff in error this statement was stricken out. It was clearly incompetent and was damaging to the plaintiff in error and should not have been admitted. It is very doubtful whether the error in its admission could be cured by immediately striking it out.

The judgment will be reversed and the cause remanded.

*Reversed and remanded.*