Alvin H. Schutt, Plaintiff-Appellee, v. Terminal Railroad Association of St. Louis, a Corporation, and Southern Railway Company, a Corporation, Defendants-Appellants.

Gen. No. 66–63.

Fifth District.

January 13, 1967.

Robert C. Ely, of St. Louis (Cox, Bassett and Quinn, of Wood River, of counsel), for appellant Terminal Railroad Association of St. Louis, and Roberts, Gundlach, Lee & Stubbs, of East St. Louis (Norman J. Gundlach, of counsel), for appellant Southern Railway Company.

McGlynn & McGlynn, of East St. Louis, for appellee.

GOLDENHERSH, J.

Defendants, Terminal Railroad Association of St. Louis, hereinafter called Terminal, and Southern Railway Company, hereinafter called Southern, appeal from the judgment of the Circuit Court of St. Clair County, entered against both defendants, upon a jury verdict in the amount of $125,000.

Count I of the complaint, directed against Terminal, is based on the Federal Employers' Liability Act (Title 45, USCA, § 51 et seq.). Count II, directed against Southern, alleges negligence on the part of Southern, and plaintiff's freedom from contributory negligence.

Terminal contends that it is entitled to a new trial because the trial court erred in denying its offer to read to the jury a portion of plaintiff's discovery deposition, which, it argues, is an admission against interest, and therefore, admissible, and erred further in giving, over the objection of Terminal, an instruction tendered by Southern.

Southern contends that the trial court erred in denying its motions for directed verdict, and argues that there is no evidence to sustain plaintiff's charges of negligence, and assuming, arguendo, that there is evidence of its negligence, such negligence was not the proximate cause of plaintiff's injury.

Both defendants contend that the verdict is grossly excessive.

The evidence shows that plaintiff was employed by Terminal as a switchman. He reported to work at 11:00 p. m. on April 8, 1963, at Terminal's C. D. Yards, located in East St. Louis. At approximately 12:40 a. m. on April 9th, he and the crew with whom he worked were ordered to take 22 cars loaded with refrigerated meat from Terminal's C. D. Yard to Southern's Coapman Yard, also located in East St. Louis. This was a movement which was made every night, and an exhibit offered by Terminal and admitted in evidence, shows that between the dates of April 1, 1962, and the date of plaintiff's injury, it left Terminal's C. D. Yard some time between 12:05 a. m. and 1:40 a. m. each morning. To reach the Coapman Yard, the train was required to pass through Southern's Sixth Street Yard. The time normally required to reach the Sixth Street Yard was 5 minutes, and the running time from C. D. Yard to Coapman, was usually about 25 minutes. The train traveled eastwardly, crossed Fourth Street in East St. Louis, and entered the Sixth Street Yard on what is described as Southern's main track.

W. R. Wilson, called by plaintiff under section 60 of the Civil Practice Act, testified that he was foreman of a Southern crew that brought a cut of 10 or 12 cars from Coapman to the Sixth Street Yard. Upon entering the Sixth Street Yard, they "kicked" the hind car onto track 3. Track 3 is a classification track which extends in a general easterly and westerly direction in Southern's Sixth Street Yard. It is the most northerly of the classification tracks, which are numbered 3 through 8, and is the nearest to the track referred to as Southern's "main." After kicking the car onto track 3, they proceeded to classify other cars standing on other tracks in the yard, which cars were to be taken to Coapman. The

car kicked onto track 3 was also to be returned to Coapman.

Track 3 is not level, there is some grade change, and the car, after being kicked onto track 3, rolled back 10 or 15 feet, and when it stopped, was "fouling the main."

Mr. Wilson also testified that he knew the Terminal would make a delivery of cars from its C. D. Yard to Southern's Coapman Yard, these cars would be included in a Southern train scheduled to leave Coapman at 1:30 a. m., the movement would be required to come through Southern's Sixth Street Yard, and when the Southern Crew kicked the car onto track 3 at about 12:15 a. m., he knew the Terminal train had not as yet come through.

Freeman G. Montgomery, called by plaintiff, testified that he was employed by Terminal as a locomotive engineer, that he was operating the engine in reverse position, which placed him to the left of the cab, that upon entering the Sixth Street Yard, the train was traveling at a speed of 6 to 8 miles per hour, that "the condition of the Sixth Street Yard as far as lighting is concerned is fairly dark," that at a point where the main track curves to the right, he could see that a car standing on track 3, about 300 feet to the east, was west of the clearance point at which a car moving over the main track will clear a car standing on track three. He estimated the length of the standing car at 50 feet, and testified that approximately one-third of the car was "fouling" the main. He stated that as soon as he saw the standing car, he applied the brakes. An emergency application of the brakes locks all of the wheels, and is the automatic train brake, as distinguished from the engine brake. Once the brake is applied, "you can't take them out." The train comes to a complete stop and the engine must "set and pump them brakes all off again." He applied these brakes when five-car lengths away from the standing car, and it takes a car length to take hold. The train would have stopped in another car length.

74

He did not know the speed at the time of impact, but "we hit a pretty good jolt."

An exhibit prepared by an engineer employed by Southern, shows that the Southern main track extends from the south line of Fourth Street in an easterly direction for 200 feet, to a switch, an industrial track extends east from the switch, the main curves to the southeast and then to the east, that the last point at which a car moving on the main track will clear a car standing on track 3 is 450 feet from the switch, that the switch for the main and track 3 is about 80 feet east of that point, that the point of impact between the locomotive and the standing car was 18 feet 9 inches east of the clearance point. The exhibit shows that there is a floodlight approximately 150 feet from the point at which the Terminal engine and the car collided, a street light approximately 160 feet distant, and another street light and a floodlight approximately 400 feet distant in the opposite direction.

Anthony A. Redfearn, the conductor on the Terminal's train, called by plaintiff under section 60, testified that he was riding in the cab, that they were using a switch engine, which works equally well forward or backward, that as the engine made the curve, the headlight, which is in a fixed position, illuminated the track ahead, that they saw the car, that there is not enough light in that part of the yard to see the car without the switch engine's headlight shining on it, none of them were sure whether the car fouled the main, and a slight brake application was made just in case, that when they were 200 to 225 feet back from the clearance point, the engineer made the emergency air brake application, the train slowed down, but hit the standing car.

Plaintiff testified that he had made this particular run twice before, that he was riding in the middle, on a small seat in the rear of the cab, that he first saw the standing car when the engine was 5- or 6-car lengths

away, that at first he could not say whether the car was fouling the track, or was in the clear, that someone yelled "it isn't going to clear," and the engineer put the train into emergency.

 After the plaintiff had rested, and the court had ruled on motions for directed verdicts, counsel for Terminal asked leave of the court to recall plaintiff for further cross-examination with respect to answers made by plaintiff to questions propounded to him at the time of the taking of his discovery deposition. The court denied the request, and counsel thereupon asked leave, during the presentation of Terminal's case, to read three questions and answers from the discovery deposition, basing the request on the ground that the answers constitute an admission against interest, and were, therefore, admissible. The record shows that counsel for Terminal cross-examined plaintiff extensively as to questions asked, and answers given, in the discovery deposition. No reason is given for counsel's failure to inquire of plaintiff regarding these matters during cross-examination. Whether a party should be permitted to recall a witness for further cross-examination after the close of the adversary's case is a matter of discretion with the trial court, and the court's ruling will not be held erroneous, unless it was an abuse of such discretion. Cal Hirsch & Sons Iron & Rail Co. v. Coleman, 227 Ill 149, 81 NE 21. The trial court did not abuse its discretion in denying Terminal's request to recall plaintiff, and its ruling was not error.

 We need not discuss the cases cited by Terminal, in support of its contention that an admission against interest made by a party to the cause, during a deposition, is admissible, since neither we, nor plaintiff, disagree with the abstract proposition of law therein set forth. An admission against interest is a statement made by or attributable to a party to an action, which constitutes an admission against his interest and tends to establish or

76

disprove any material fact in the case. We have examined plaintiff's testimony, and the answers which Terminal desired to read to the jury, and hold that these answers are not admissions against interest and the trial court properly refused the offer.

At the request of Southern, the court gave the following instruction:

"If the jury believes from all the evidence that the plaintiff was guilty of negligence which proximately contributed to his injuries, plaintiff cannot recover from defendant, Southern Railway Company; however, this is not true as to defendant, Terminal Railroad Association of St. Louis.

"If the jury finds from all the evidence that defendant, Terminal Railroad Association of St. Louis, or any of its agents, servants, or employees was guilty of any negligence which proximately contributed in whole or in part to plaintiff's injuries, plaintiff is entitled to recover from defendant, Terminal Railroad Association of St. Louis."

Terminal objected to the giving of the instruction, and plaintiff's counsel advised the court that in his opinion, the instruction was argumentative.

█ The instruction is not in IPI, however, IPI 160.22 is similar in content. Supreme Court Rule 239 provides that when IPI contains an instruction applicable in a civil case, and the court determines that the jury should be so instructed, the IPI instruction shall be used. In view of the fact that IPI 160.22 is applicable in this case, if the parties desired an instruction on the issues covered therein, the IPI form should have been used.

█ An examination of the pleadings shows that Terminal did not plead contributory negligence in mitigation of damages, and tendered no instruction on that issue. If plaintiff's contributory negligence were an issue in the case against Terminal, and the evidence such as

77

to make the question a close one, failure to comply with Rule 239 might possibly be prejudicial. Here, however, the giving of the instruction could not possibly have been prejudicial to Terminal, and the error is harmless.

Count II of the complaint, in substance, alleges negligence on the part of defendant, Southern, as follows:

(a) it permitted the box car to stand upon and foul the track when it knew, or in the exercise of reasonable care should have known, that it presented a hazard to traffic proceeding along the main line.

(b) failed to provide adequate warning to plaintiff and his crew members of the danger.

(c) failed to provide lighting adequate to enable persons traveling its main line to see the dangerous obstruction.

At the close of the plaintiff's case, Southern moved for a directed verdict on the grounds that the evidence showed that "the accident in question was not proximately and directly caused by any of the charges of negligence but instead the proximate and direct cause of this accident was due to the negligence of the other defendant, Terminal Railroad Association of St. Louis. As to the charge of negligence contained in paragraph 4b, there is no duty on the part of the Southern toward the plaintiff, as charged in said paragraph, and there's no evidence to sustain this allegation of paragraph 4b. As to 4c, there is no duty on the part of the defendant, Southern, or any evidence to sustain the allegation of paragraph 4c of the plaintiff's complaint, against the Southern." At the close of all the evidence, Southern filed written motions for directed verdicts on all three specific charges of negligence.

 A motion for a directed verdict presents the issue of whether the plaintiff's evidence, considered together with all reasonable inferences from it, in its aspect most favorable to the plaintiff, fails to prove any necessary element of the plaintiff's case. Hulke v. Inter-

78

national Mfg. Co., 14 Ill App2d 5, 142 NE2d 717. Southern owed plaintiff and others rightfully upon its premises, the duty to exercise ordinary care to keep the premises in a reasonably safe condition. Milauskis v. Terminal R. Ass'n of St. Louis, 286 Ill 547, 122 NE 78. As stated by the Supreme Court in Darling v. Charleston Community Memorial Hospital, 33 Ill2d 326, 211 NE2d 253 at page 331, ". . . . in negligence cases, the duty is always the same, to conform to the legal standard of reasonable conduct in the light of the apparent risk. What the defendant must do, or must not do, is a question of the standard of conduct required to satisfy the duty."

 On the issues of proximate cause, and whether there was an independent intervening cause, the rule is well stated in Neering v. Illinois Cent. R. Co., 383 Ill 366, 50 NE2d 497, in which opinion, at page 380, the Supreme Court said: "It cannot be denied that if the negligence of the defendant only furnishes a condition and that condition causes an injury by the subsequent independent act of a third person, the creation of the condition is not the proximate cause of an injury. However, the rule is that the subsequent independent act, in order to break the causal connection, must be one, the intervention of which was not probable or foreseeable by the first wrongdoer. What constitutes proximate cause has been defined in numerous decisions, and there is practically no difference of opinion as to what the rule is. The injury must be the natural and probable result of the negligent act or omission and be of such a character as an ordinarily prudent person ought to have foreseen as likely to occur as a result of the negligence, although it is not essential that the person charged with negligence should have foreseen the precise injury which resulted from his act. (Citing cases.) An intervening efficient cause is a new and independent force which breaks the causal connection between the original wrong and the injury and itself becomes the direct and immediate cause

of the injury. (Citing cases.) The intervention of independent concurrent or intervening forces will not break causal connection if the intervention of such forces was itself probable or foreseeable. (Citing cases.) What is the proximate cause of an injury is ordinarily a question of fact to be determined by a jury from a consideration of all of the evidence. (Citing cases.)" In reviewing the rulings of the trial court on these successive motions, the evidence must be examined in the light of the foregoing rules.

The testimony shows that Terminal crews, while in Southern's yard, are required to operate under Southern's rules.

Southern rule 103A provides:

> "Cars or engines stopped on tracks must be properly secured, must clear insulated joints, other tracks, and street, public or private crossings, and must be left as far back from the crossing as practical under the circumstances and proper precautions must be taken to prevent damage or fouling other tracks before coupling the cars or engines where such equipment may roll away."

Southern rule 98 provides:

> "Cars must not be left fouling the end of two or more tracks, junctions and railroad crossings at grades, when engine is detached to perform switching or other work except an unavoidable circumstance."

Southern contends that in leaving the car on track 3 at a point where it fouled the main track, it did not violate these rules, because its crew, at the time of the collision, was still engaged in the process of switching and classifying cars, and the car would have been removed from track 3 prior to completion of the switching process in

80

which its crew was then engaged. It also argues that the rule is inapplicable because the track referred to as the "main" is not a main line, but is, in fact, a classification track. It further contends that assuming, arguendo, that it violated its rule 103A, and was negligent, its conduct at most created a condition, and it was the independent, intervening act of Terminal which caused plaintiff's injury. Southern contends that the proximate cause of plaintiff's injury was Terminal's violation of Southern's rule that speed within its yard must be such that it will permit stopping within one-half the range of vision.

■■ With regard to plaintiff's allegations that Southern was negligent in fouling the main track and in failing to provide adequate warning of the hazard thus created on the track over which it knew Terminal's crew would be required to travel, the testimony shows that Southern's foreman knew the time interval within which the movement must be accomplished, and that the Terminal train had not come through the Sixth Street Yard. The testimony and exhibits showed the location of lights in Southern's yard, and there is testimony that the standing car could not be seen until Terminal's engine had rounded the curve in the main track, when for the first time it was visible in the light cast by the headlight on the switch engine. Under the evidence presented, the issues of Southern's negligence, and whether its negligence was a proximate cause of plaintiff's injury were properly submitted to the jury, and the trial court did not err in denying Southern's motions for directed verdicts.

We next consider the defendants' contention that the verdict and judgment are excessive. The evidence shows that at the time of his injury, plaintiff was 38 years of age, and had been employed by Terminal as a switchman for 13 years. He was first sergeant in a Railway Battalion

in the active reserves, in charge of training a company of men to be switchmen. In 1961, he earned $6,116.97 from the defendant, Terminal, and $577 from the Army; in 1962, $6,153 and $475, and in 1963, $1,960.92 and $378.-88.

At the time that Terminal's engine struck the standing car, plaintiff was thrown backward and struck a water cooler and the steel doors in the back of the cab. His next recollection is of lying on the ground, vomiting. He was taken to the Missouri Pacific Hospital in St. Louis and remained there for 14 days. His left side was numb and he experienced sharp pain in his back and hip. Upon his discharge from Missouri Pacific Hospital, he continued as an outpatient and received treatment once each week until November 1963. In June 1963, his attorney referred him to Dr. Kilian F. Fritsch, an orthopedic surgeon. At that time he was complaining of numbness in the left arm and leg, and was walking with the aid of a crutch. The left thigh was one-half inch smaller than the right. X rays showed a narrowing of the segment between L–5 and S–1. There was a fifty percent loss of movement of the spine, muscle spasm, a positive Laseque sign, which indicates the sciatic nerve in the left leg is tender. A myelogram was performed in April 1964, and was negative. Dr. Fritsch made a diagnosis of a pre-existing degenerative disc at L–5 and S–1, which was aggravated by the trauma experienced on April 9, 1963. He uses a cane to walk and wears a lumbosacral corset. Dr. Fritsch was of the opinion that plaintiff cannot do physical work requiring walking, stooping or bending, and cannot get on and off moving trains as a switchman. Plaintiff has not worked in a railroad job since his injury, and because he was unable to perform his Army duties, he was put in a reservist group to serve out the rest of his enlistment. He was not permitted to reenlist because he cannot pass the Army physical examination.

82

At the time of trial (May 1965) he had worked three months as an insurance salesman and had monthly earnings of $214, $232 and $80. He uses the cane to walk because he has experienced sudden attacks of pain which run from the hip down into his left leg, and when this occurs it is impossible for him to stand. Prior to April 9, 1963, he had worked regularly as a switchman and had experienced no trouble with his back or leg.

In Dallas v. Granite City Steel Co., 64 Ill App2d 409, 211 NE2d 907, at page 427, this court said: "The courts have repeatedly held that the amount of damages to be assessed is peculiarly a question of fact for the jury, and if the jury is properly instructed on the measure of damages, an appellate court should not substitute its judgment as to the sum to be awarded in a given case, for that of the jury. Smith v. Illinois Cent. R. Co., 343 Ill App 593, 99 NE2d 717; Hulke v. International Mfg. Co., 14 Ill App2d 5, 142 NE2d 717; Ford v. Friel, 330 Ill App 136, 70 NE2d 626."

██ ██ The assessment of damages is preeminently a jury function, Braswell v. New York, C. & St. L. R. Co., 60 Ill App2d 120, 208 NE2d 358. On the record before us we are not prepared to say the judgment is excessive.

During the oral argument of this case, the court requested counsel to file additional briefs addressed to the question of whether the defendant, Southern, was liable to plaintiff, under the doctrine of "vicarious liability." (See American National Bank & Trust Co. v. Pennsylvania R. Co., 35 Ill2d 145, 219 NE2d 529; Armstrong v. Chicago & W. Ind. R. Co., 350 Ill 426, 183 NE 478; Chicago & E. I. R. Co. v. Schmitz, 211 Ill 446, 71 NE 1050; Chicago & Grand Trunk Ry. Co. v. Hart, 209 Ill 414, 70 NE 654, 66 LRA 75; Wilson v. Terminal R. Ass'n of St. Louis, 333 Ill App 256, 77 NE2d 429.) Because we have decided that the evidence supports the jury's verdict that defendant, Southern, was negligent, we do not

discuss this issue. We are, nevertheless, grateful to counsel for a thorough briefing of the question.

For the reasons herein set forth, the judgment of the Circuit Court of St. Clair County is affirmed.

Judgment affirmed.

MORAN and EBERSPACHER, JJ., concur.