THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
REUCSHELLE HARRIS, Defendant-Appellant.

First District (1st Division)    No. 61288

Opinion filed February 14, 1978.

Arnette R. Hubbard, of Chicago (Donald Hubert, of counsel), for defendant-appellant.

Bernard Carey, State's Attorney, of Chicago (Laurence J. Bolon, Timothy Quinn and Maria C. Cabrera, Assistant State's Attorneys, of counsel), for the People.

Mr. PRESIDING JUSTICE GOLDBERG delivered the opinion of the court:

After trial by jury, Reucshelle Harris (defendant) was found guilty of armed robbery (Ill. Rev. Stat. 1971, ch. 38, par. 18—2), and was sentenced to 4 to 12 years. She appeals to this court. Maurice Jones, a codefendant, is not involved in this appeal. Defendant raises no point on the sufficiency of the evidence to prove guilt beyond a reasonable doubt. However, a factual statement is necessary.

About 12:30 a.m. on August 15, 1973, Amos Guilcrest and Michael King were walking slowly down a street in Chicago. The defendant and codefendant passed Guilcrest and King and walked in the other direction. Defendant and her companion said "hello" as they passed. Defendant and codefendant then turned and walked toward Guilcrest and King. About this time, defendant said to the codefendant either, "Go over there" or "Will you go over there?" As the four persons came together, the codefendant produced a pistol and said, "Hold it, brother, this is a stickup." A dark garment or sweater of some kind was draped over defendant's hand.

Both Guilcrest and King took money from their pockets and gave it to the codefendant. The codefendant ordered them to turn around and walk away or he would shoot. They obeyed. About that time Guilcrest saw a police vehicle which he summoned. Guilcrest and King told the officers they had been robbed and pointed out defendant and codefendant about to enter a gangway. The police vehicle went after them. A police squad car then approached and Guilcrest and King told these officers they had been robbed. The police first arrested the codefendant and then saw the defendant. They drew their guns and approached. She said, "This is the first time I ever did this." The officers found that she had $2 rolled up in her hand. She told the officers that the rest of her money was in her bra. A search at the police station disclosed $57 on her person. No gun was found despite a search of the area.

Defendant testified in her own behalf that she had been visiting in the apartment of her friend, Ernest Luckett. The codefendant arrived later. He was acting in a disturbed manner. He went out to buy drinks and defendant accompanied him. He told defendant he was going to rob somebody. Defendant thought it was a joke, but she agreed. They saw

Guilcrest and King on the street. Defendant thought the codefendant knew them. The codefendant stopped them and they appeared frightened. They started looking into their pockets. The defendant had not seen a gun. She turned and ran through a gangway to a fence. Jones caught up with her, helped her over the fence and handed her some of the money. She told police that the money was in her bra. The parties stipulated that the codefendant, Maurice Jones, was found not competent to stand trial.

Upon consideration of the evidence, we conclude that it is amply sufficient to prove the guilt of the defendant for armed robbery to the point of being overwhelming. The points relied upon by defendant will now be discussed.

## I.

Immediately prior to the start of opening statements, counsel for defendant requested the court to excuse Andrew Pachek, one of the jurors. Counsel told the court that during the noon hour, in the courthouse lobby, this juror had pointed defendant out to other persons and his face indicated a dislike for defendant. The court interviewed the juror in chambers in the presence of a court reporter. The court advised the juror regarding these statements by the defense and also stated that if the juror did this he might possibly be in contempt of court. The juror denied that he had ever pointed anybody out as alleged. Proceeding in chambers, the court then had the juror sworn and submitted him to the attorneys for interrogation. The State's Attorney asked no questions. Defense counsel inquired from the juror as to whether he had engaged in a discussion or had heard a discussion concerning the defendant. The juror denied this and stated that he did not notice the defendant in the corridor. The trial then proceeded. Defendant urges that Juror Pachek was the foreman of the jury and defendant was thus denied a fair trial.

There are a number of decided cases which throw some light upon this type of situation. The cases involve alleged failure of a juror on *voir dire* to disclose pending suits against him concerning his qualifications to participate in a personal injury case *Pekelder v. Edgewater Automotive Co.* (1977), 68 Ill.2d 136, 368 N.E.2d 900; the disposition of challenges for cause by the court in jury selection *People v. Cole* (1973), 54 Ill. 2d 401, 298 N.E.2d 705; *People v. Chatman* (1977), 49 Ill. App. 3d 1034, 364 N.E.2d 739; and, finally, issues arising from alleged unauthorized communications between the jurors and outsiders, *People v. Charles* (1977), 46 Ill. App. 3d 485, 360 N.E.2d 1214; *People v. Peters* (1975), 33 Ill. App. 3d 284, 337 N.E.2d 716, *leave to appeal denied*, 61 Ill. 2d 603.

In our opinion, these authorities are of some assistance in the case

before us. We note first the illuminating discussion in *Cole* in which the supreme court rejected the cliche that a juror must be " 'wholly free from even the suspicion of bias'." (*People v. Cole*, 54 Ill.2d 401, 415 quoting from *People v. Cravens* (1941), 375 Ill. 495, 497, 31 N.E.2d 938.) The court pointed out in *Cole*, "The determination of the trial court as to the competency of the juror should not be set aside unless it is against the manifest weight of the evidence * * *" *People v. Cole*, 54 Ill. 2d 401, 415.

In our opinion, the basic test which should be applied here is that of prejudice to the defendant. We pointed this out in *Peters*, and reviewed the authorities which established the principle that in these cases of alleged unauthorized communications to a juror, it is necessary for the defendant to show that the incident in some way was prejudicial to his rights. (*People v. Peters*, 33 Ill. App. 3d 284, 289.) Subsequently in *Charles*, the court stated that unauthorized contact between the jury and a deputy sheriff was not grounds for a new trial in the absence of a showing of prejudice to the defendant. *People v. Charles*, 46 Ill. App. 3d 485, 488.

■■ In the case before us, the point raised against the juror is completely vague. It is based upon an assertion by defendant's counsel which depends upon another assertion by defendant which in turn depends upon observation of the juror by the defendant and the conclusion reached in this manner regarding an expression on the juror's face. There is no tangible evidence of any communication by any outsider to the jury or the converse thereof. In view of the denial of these vague charges by the juror to the court in chambers, and in response to questions by defense counsel, we must conclude that the ruling by the court was well within the bounds of reasonable discretion. We find no violation of defendant's rights in this regard.

One additional factor requires consideration in connection with this point and the two additional points raised regarding trial error. As above shown, the evidence of the prosecution proved guilt of the defendant beyond reasonable doubt. Two witnesses testified in a clear and convincing manner to the presence of defendant at the scene of the robbery. In addition, defendant fled from the scene after completion of the robbery and continued flight even to the extent of attempting to scale a fence, when she was arrested. She accepted possession of the proceeds of the crime from the codefendant; secreted these funds about her person and then told the police in effect that this was the first crime she had committed. Against this evidence, the defendant's own attempted denial is no more than an example of vague naivete. In short, it is difficult to see how any reasonable jury or other trier of fact could arrive at any verdict other than guilt.

## II.

During the cross-examination of the complaining witness, Amos Guilcrest, counsel for defendant questioned the witness as to whether he had ever spoken to a man named Ernest Luckett regarding alleged payment of money by Luckett to the witness in return for an agreement whereby Guilcrest would drop the charges against defendant. Guilcrest expressly denied these charges and denied he had ever been to Luckett's home or had ever spoken to Luckett on that subject or for that purpose. Luckett was called as a witness by defense counsel during defendant's case in chief. After direct examination and cross-examination, counsel for defendant conducted a redirect examination of Luckett. She then dismissed Luckett from the stand and he took a seat in the courtroom. Thereafter, during the direct examination of defendant, counsel for defendant told the court, out of the presence of the jury, that she had forgotten to question Luckett about his alleged conversation with Guilcrest. Therefore, she requested the court to exclude Luckett from the courtroom so that she would have the privilege of recalling him after the examination of defendant had been completed. Counsel for defendant made an offer of proof to the court that Luckett would testify Guilcrest came to his home five times between August 15 and August 28, 1973, and the subject of conversation between these persons was that Guilcrest "would not put Reucshelle Harris [defendant] into this matter if he were paid the sum of $300." The court refused to permit counsel for defendant to recall Luckett to the stand.

There are virtually innumerable incidents which occur during trial in which counsel for either side may wish to vary accepted rules of procedure. It is impossible to list or even to categorize these various types of incidents. Consequently, reviewing courts in civil and criminal cases have evolved the rule that in these trial incidents involving a requested variation from the usual procedure, the disposition of the matter necessarily rests largely in the discretion of the trial court and this discretion will not be interfered with except where there has been a clear abuse thereof or where prejudice to the defendant is shown. See *People v. Fox* (1971), 48 Ill. 2d 239, 250, 269 N.E.2d 720, involving a request to reopen a case for the making of a motion to strike certain testimony; *People v. Robbins* (1974), 21 Ill. App. 3d 317, 320, 315 N.E.2d 198, involving admission of exhibits after closing of a party's case; and *Schutt v. Terminal R.R. Association* (1967), 79 Ill. App. 2d 69, 76, 223 N.E.2d 264, involving an attempt to recall a witness for further cross-examination after close of the case.

■■ In the case before us, the motion by defense counsel required the exercise of discretion by the trial court. We cannot say that this discretion

was not properly exercised. *People v. Bouderioyni* (1921), 299 Ill. 96, 132 N.E. 501, cited by defendant is not pertinent. There, in a case involving indecent liberties with a child, the prosecution called the victim's father. He testified that defendant had importuned him to assist the defense. The supreme court held that evidence that the parents of the victim sent an intermediary to defendant with an offer to dismiss the prosecution for a cash consideration was competent. The court described the evidence as "directly contradictory and exceedingly close" (*People v. Bouderioyni*, 299 Ill. 96, 103). The case goes only to the competency of the evidence and does not touch upon the legal problem presented by the record before us.

We note also in the case before us that the dropping of the charges against defendant was not within the control of Amos Guilcrest. Also, it is difficult to understand how he could possibly have shielded defendant from guilt in view of the testimony by the other robbery victim, Michael King, the immediate intervention by the police and their knowledge of the flight of defendant from the scene. We find no error in this regard.

### III.

■■ Defendant raises a number of issues concerning prejudicial argument by the State. We have examined the closing arguments and we find this point wanting in substance. In a number of instances, no objection to the allegedly improper argument was made by defendant. This absence of objection constitutes a waiver of the point. (*People v. King* (1977), 66 Ill. 2d 551, 559, 363 N.E.2d 838.) In one situation the assistant State's Attorney made a very general observation which included the word "rapists." Objection was made by defendant's counsel. The trial court immediately intervened, struck the offending word from the record, stated that he agreed with the objection and told the jurors to dismiss the word from their minds. In our opinion, viewed in the context of the entire record, this prompt and curative action by the trial judge was sufficient to eliminate any alleged error resulting from this argument. *People v. Burnett* (1975), 35 Ill. App. 3d 109, 119-20, 341 N.E.2d 86, *leave to appeal denied*, 63 Ill. 2d 552.

Concerning the remaining instances, we cannot say that any or all of them combined constituted "a material factor in the conviction" *People v. Clark* (1972), 52 Ill. 2d 374, 390, 288 N.E.2d 363; or resulted in "substantial prejudice to the accused" *People v. Nilsson* (1970), 44 Ill. 2d 244, 248, 255 N.E.2d 432, *cert. denied* (1970), 398 U.S. 954, 26 L. Ed. 2d 296, 90 S. Ct. 1881. We, therefore, reject the claim of prejudicial error resulting from the final argument.

### IV.

■■ The contention of defense counsel regarding the sentence is

directed only at the maximum of 12 years. Defendant points out that she was a first offender and that she was pregnant at the time of the sentence. As counsel concedes, these factors can have no possible effect upon the minimum sentence which is fixed by law for a Class 1 felony. (Ill. Rev. Stat. 1973, ch. 38, par. 1005—8—1(c)(2).) The 12 year maximum imposed by the court was on the 3 to 1 ratio which is required for felonies of the second and third classes. A greater maximum could have been imposed in the Class 1 felony before us. Under these circumstances, we find no abuse of discretion in the sentence. *People v. Perruquet* (1977), 68 Ill. 2d 149, 368 N.E.2d 882.

Judgment affirmed.

McGLOON and O'CONNOR, JR., JJ., concur.