THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
WILLIE HOLMES, Defendant-Appellant.

First District (4th Division)    No. 79-2195

Opinion filed March 11, 1982.

Abishi C. Cunningham, Jr., of Chicago, for appellant.

Richard M. Daley, State's Attorney, of Chicago (Michael E. Shabat, Lester M. Joseph, and Bruce Rose, Assistant State's Attorneys, of counsel), for the People.

PRESIDING JUSTICE JOHNSON delivered the opinion of the court:

Following a bench trial, defendant, Willie Holmes, was found guilty of armed robbery (Ill. Rev. Stat. 1977, ch. 38, par. 18—2). Defendant received a sentence of 10 years imprisonment.

On appeal, defendant presents the following issues for review: (1) whether he was proved guilty of armed robbery beyond a reasonable

doubt; (2) whether the trial court properly denied him leave to recall a witness; (3) whether there was probable cause for his arrest; and (4) whether his identification by an eyewitness should have been excluded because of an unnecessarily suggestive showup.

We affirm.

Prior to trial, defendant filed a motion to quash arrest and suppress identification. At the hearing on this motion, defendant Holmes testified that on March 29, 1979, at approximately 9:15 p.m., he was in a tavern, known as McGee's, at 70th Street and Halsted, in Chicago. The police came into the tavern and asked him and Otis McGuire to come outside with them. Once outside, the police handcuffed him and drove him to 67th and Halsted. A lady came out of the tavern at that address, pointed at him, and went back into the tavern. Holmes and McGuire were both handcuffed and standing together when the lady identified him. Thereafter, he was taken to the police station. The witness stated that the police never read him his *Miranda* rights.

Redic Richardson, Sr., testified that he is the owner of the Tchula Tavern, located at 6745 South Halsted. On January 7, 1979, his tavern was robbed. Redic, Sr., was not present at the time of the robbery, but his son had been a witness. On March 29, 1979, at about 9:15 p.m., Redic, Sr., followed a young man into a tavern at 7000 South Halsted. Redic's son had pointed out the young man as the one who committed the January 7 robbery. The police arrived and defendant was later arrested.

At the hearing, Redic Richardson, Jr., testified that he is 10 years old. On March 29, 1979, he was outside in front of his father's tavern when he saw a man whom he recognized as the same man who had robbed the tavern on January 7. He immediately went inside and informed his father. After the January robbery, Redic, Jr., had given a description of the robber and his accomplice. He stated that the robber was wearing a gray shirt, dark pants, a trench coat, and a skull cap. His accomplice, the taller of the two men, had on a jacket; there were holes in his pants but he wore another pair of dark pants underneath; he wore sunglasses, and his hat was tilted. Elizabeth Spells, the barmaid at the Tchula Tavern, had told him that the robber had a scar on the side of his face. On March 29, Redic, Jr., recognized this man, saw the scar on his face, and identified him as the defendant.

After the hearing, the trial judge denied the motion to quash the arrest and decided to delay the ruling on the motion to suppress identification until trial. It was stipulated that the testimony of Redic, Sr., and Redic, Jr., at trial would be the same as their testimony at the hearing.

At trial, Elizabeth Jean Spells testified that on January 7, 1979, between the hours of 9 and 10 p.m., she was working as a barmaid at the Tchula Tavern. Two men entered the tavern whom she had never seen

before. When they walked in, she was playing a game of cards with one of the patrons while Redic, Jr., watched. She walked to the front of the tavern to take their order. The smaller of the two men went to the back end of the bar where the customers were sitting, while the heavier man, whom she identified as defendant, went to the carry-out counter in the front of the bar. Defendant ordered a quart of "Richard's," a brand of wine, and she turned to reach for the bottle on the shelf. When she turned again, she saw that he had a gun in his hand. He told her not to scream or drop the bottle, and to give him the money from the cash register. Spells was able to see his face and the upper part of his body. She took $103 from the cash register and handed it to defendant who then walked out of the tavern. As Spells walked back to the far end of the bar, the man who had entered with defendant came up to her and said, "Don't move. If you do, you [are] dead." He had something that appeared to be a gun. She stated that the man who robbed the tavern wore dark clothing, a shirt, a trench coat, and a skull cap. He had a long scar on one side of his face. Although she thought the scar was on the right side of his face, she later realized that, in facing the offender, the scar was to her right and on the left side of his face. She could not recall his weight but stated that he was heavy and approximately 5 feet 6 inches or 5 feet 8 inches in height. Spells further testified that on March 29, 1979, she saw defendant—the same man who had robbed the tavern—and he was wearing the same clothing that he had worn the night of the robbery.

On cross-examination, for the limited purpose of identification, Spells stated that she did not get a good look at the second man, but the man who robbed the tavern had a long scar on the side of his face which was noticeable. The skull cap covered his head. On the evening of March 29, 1979, Redic, Sr., asked her to go to the police car to make an identification.

Direct examination resumed and Spells made an in-court identification of defendant. On March 29 when the police took her outside to make an identification, there were two persons in the car; she identified defendant only.

On recross, Spells specifically indicated that the scar on defendant's face began at his left temple and ended at about his mouth. On January 7, defendant did not have a full beard. After Spells' testimony, the State rested its case in chief.

Defendant's motion for a directed finding was denied. The court ruled on defendant's motion to suppress identification and the motion was denied.

Defendant's first witness, James McKnight, testified that he was a frequent patron at the Tchula Tavern and was present on the evening of January 7, 1979. Another customer and Spells were engaged in a game of

cards and he sat nearby to watch the game. He saw the two individuals enter the tavern. He saw Spells leave the card game and speak to one of the individuals who remained at the front counter. The witness could not describe the physical appearance of that individual nor could he recall the approximate height or weight of the person. McKnight stated that the lighting in the bar that evening was dim, describing it as pink iridescent, and adding that before January 7, the lighting was another color. He never saw Spells go to the cash register. The two individuals were in the tavern for 2 or 3 minutes; they left quietly and quickly. Thereafter, Spells said the tavern had been robbed. She instructed Redic, Jr., to call his father and the police. The witness said he could not positively identify either of the men who entered the tavern that evening. After this testimony, the court recessed.

When court resumed, defense counsel moved to reopen McKnight's testimony, stating that he had received information from McKnight which had previously been unknown to the defense. Defense counsel tendered a signed statement from McKnight and made an offer of proof that defendant was definitely not the same man McKnight remembered from the night of the robbery, and that he would not have missed noticing a man of defendant's stature.

The State objected to the recalling of McKnight, stating that the witness' previous testimony had indicated a lack of ability to observe anything about the man who committed the robbery. The trial court denied defense counsel's motion to recall McKnight.

Officer Ronald Gordon testified that he investigated the robbery of January 7. His report contained a description of defendant which was given to him by Spells. The description was that of a male Negro, dark-complexioned, with a scar on the right side of his face, 30 to 35 years of age, 5 feet 6 inches in height and weighing 180 pounds, who was wearing a skull cap and a trench coat and carrying a .22-caliber handgun.

Lucinda Tripp testified that she is defendant's fiancee; they live together. She has three children, two of whom were fathered by defendant. She remembered the evening of January 7, 1979, because she and defendant argued in their apartment from 8:30 to midnight. Tripp had gone to the Tchula Tavern in mid January 1979 to purchase liquor. The light over the takeout counter was a bright light. She stated that following defendant's arrest, she never talked with the police.

After defense counsel rested, closing arguments were heard. Defendant was found guilty of armed robbery.

Defendant contends he was not proved guilty beyond a reasonable doubt. According to defendant, Spells' testimony was contradicted by her description of the robber, by the testimony of defendant's fiancee that he was at home on that evening, and by the offer of proof as to the testimony

of James McKnight that defendant was definitely not one of the robbers. Further, Spells' description of the robber differed from defendant's actual physical appearance; he is approximately 6 feet in height and weighs 240 pounds.

Where the evidence is in conflict, it is the province of the trier of fact to determine the credibility of the witnesses and the weight to be afforded their testimony. (*People v. Jennings* (1976), 37 Ill. App. 3d 982, 984, 347 N.E.2d 421, 422.) In a bench trial, such as here, the trial judge's determination as to the credibility of witnesses and the weight to be given their testimony must be accepted by the reviewing court, unless it is contrary to the weight of the evidence or so unsatisfactory as to lead to a reasonable doubt of defendant's guilt. *People v. Cozzi* (1981), 93 Ill. App. 3d 94, 100, 416 N.E.2d 1192, 1196-97.

The record shows that Spells' description of defendant was consistent. Although defendant maintains that the inaccurate description should lead to reversal, we must disagree. Discrepancies or weaknesses in the manner in which an identification is made only affect the credibility of the witness and the weight to be given his testimony, and this determination is within the province of the trial judge. (*People v. Cozzi* (1981), 93 Ill. App. 3d 94, 100.) The testimony of other witnesses and the remaining evidence amply support the trial judge's determination of defendant's guilt.

Defendant contends that refusal to allow James McKnight to be recalled to testify resulted in prejudice to his case because exculpatory evidence was excluded.

Recalling a witness rests largely within the discretion of the trial judge, and unless it appears that the denial of the request was manifestly prejudicial to defendant it is not error to refuse a request to permit the recalling of a witness. (*People v. Harris* (1978), 57 Ill. App. 3d 639, 643, 373 N.E.2d 593, 596, *aff'd* (1979), 74 Ill. 2d 472, 386 N.E.2d 60.) An examination of McKnight's testimony indicates that he could not recognize the person who committed the robbery. To allow further testimony would not have added anything to the witness' prior testimony. We cannot say that the trial judge abused his discretion by refusing to allow McKnight to be recalled.

Defendant next contends his arrest was not based on probable cause. The State maintains that defendant's arrest was based upon probable cause, and that even if there had been no probable cause for the arrest the in-court identification of defendant by Spells was properly admitted because it had an origin independent of the arrest and showup identification.

In determining whether there was probable cause, we must look at all of the circumstances presented to the investigating officer. Probable

cause exists " 'when the facts and circumstances within the arresting officer's knowledge are sufficient to warrant a man of reasonable caution in believing that an offense has been committed and that the person arrested has committed the offense.' " (*People v. Creach* (1980), 79 Ill. 2d 96, 101, 402 N.E.2d 228, 230, quoting *People v. Robinson* (1976), 62 Ill. 2d 273, 276, 342 N.E.2d 356, 358.) Existence of probable cause depends upon the totality of the circumstances as viewed under practical considerations of everyday life from the point of view of reasonable men. (*People v. Green* (1980), 88 Ill. App. 3d 929, 932, 410 N.E.2d 1003, 1006.) Facts sufficient to establish probable cause need not be sufficient to establish guilt beyond a reasonable doubt, and probable cause may be founded upon evidence which would not be admissible at trial. *People v. Blitz* (1977), 68 Ill. 2d 287, 292, 369 N.E.2d 1238, 1240, *cert. denied* (1978), 435 U.S. 974, 56 L. Ed. 2d 68, 98 S. Ct. 1622.

■■ We find there was sufficient evidence at the hearing on the motion to suppress for the trial judge to rule that probable cause existed. At the hearing, the testimony of Redic, Jr., was consistent with regard to the description of the offenders. The information was sufficient to establish probable cause.

Defendant's final contention is that Spells' out-of-court identification resulted from a showup which was unnecessarily suggestive under the totality of the circumstances. We disagree. This court has had occasion to note the existence of elements of "suggestiveness inherent in any showup identification procedure." (*People v. Lindsey* (1979), 72 Ill. App. 3d 764, 776, 391 N.E.2d 382, 391; see *Stovall v. Denno* (1967), 388 U.S. 293, 18 L. Ed. 2d 1199, 87 S. Ct. 1967.) However, the *Stovall* test of totality of the circumstances makes it essential that we approve of the procedure here. The *Stovall* test "permits the admission of the confrontation evidence if, despite the suggestive impact, the out-of-court identification possesses certain features of reliability." (*Manson v. Brathwaite* (1977), 432 U.S. 98, 110, 53 L. Ed. 2d 140, 151, 97 S. Ct. 2243, 2251.)

> "In other words, evidence of an unnecessarily suggestive identification may nevertheless be admitted at trial if reliability of the identification, under the totality of circumstances, is shown. The Supreme Court in *Manson* further held that in assessing the reliability of an identification, the factors set out in *Neil v. Biggers* (1972), 409 U.S. 188, 199, 34 L. Ed. 2d 401, 411, 93 S. Ct. 375, are to be considered. Those factors are 'the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation.' " *People v. Manion* (1977), 67 Ill. 2d 564, 571, 367

N.E.2d 1313, 1317, *cert. denied* (1978), 435 U.S. 937, 55 L. Ed. 2d 533, 98 S. Ct. 1513.

■■ Considering the above factors as related to this case, we hold that the out-of-court identification by Spells was reliable under the totality of the circumstances.

For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

ROMITI and LINN, JJ., concur.