Rule 23 order filed
March 30, 2011;
Motion to publish granted
May 5, 2011.

NO. 5-09-0563

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Union County. |
| | ) | |
| v. | ) | No. 09-CF-55 |
| | ) | |
| CEDRIC J. SINEGAL, | ) | Honorable |
| | ) | Mark M. Boie, |
| Defendant-Appellant. | ) | Judge, presiding. |

PRESIDING JUSTICE CHAPMAN delivered the judgment of the court, with opinion.

Justices Welch and Donovan concurred in the judgment and opinion.

**O P I N I O N**

The defendant, Cedric J. Sinegal, appeals his conviction for unlawful possession of cannabis. He argues that the trial court erred in denying his motion to quash arrest and suppress evidence because officers who pierced the side of a plastic-wrapped package containing the cannabis lacked probable cause to search the package. We affirm.

The defendant's conviction stems from a stop of his vehicle at a gas station near Interstate 57 in Union County, Illinois. Trooper Rodger Goines initially stopped the vehicle because the defendant was exceeding the speed limit and his car had tinted windows and did not have a front license plate. After stopping the vehicle, Trooper Goines learned that the defendant's vehicle was registered in Louisiana. Illinois requires vehicles to have two license plates, while Louisiana does not. At the relevant time, Illinois prohibited tinted windows for the windshield and the windows to each side of the driver, while Louisiana does not. (We note that the law has subsequently been amended to relax that prohibition. 625 ILCS 5/12-

1

503(a-5) (West Supp. 2009); Pub. Act 96-815, §5 (eff. Oct. 30, 2009).) It is not illegal to drive an out-of-state vehicle into Illinois that fully complies with the requirements of the state in which it is registered; however, Trooper Goines did not realize that the car was registered in Louisiana until he made the stop. During the course of the stop, Trooper Goines discovered a large package wrapped in opaque green plastic. He suspected that the package contained narcotics. He therefore called for backup, arrested the defendant and a passenger in his vehicle, and searched the vehicle. Sergeant Steven Lawrence arrived and pierced the side of the package, revealing that it contained cannabis.

The defendant and his passenger were charged with unlawful possession with intent to deliver cannabis, cannabis trafficking, and unlawful possession of cannabis. Their cases were consolidated for purposes of a series of hearings on their motions to quash their arrests and suppress evidence of the cannabis.

At the first hearing on the motions, Trooper Goines testified that he saw the defendant's vehicle traveling at a speed of 68 miles per hour in a 65-mile-per-hour zone. He also noticed that the vehicle had no front license plate and had black tinted windows on each side of the driver and on the rear windows. He followed the defendant's vehicle as the defendant exited the interstate. At the top of the exit ramp, the vehicle did not come to a complete stop. In addition, it appeared to begin to turn right but then turned left instead. Trooper Goines testified that he followed the vehicle into a Travel Hut located near the interchange. There, both the driver and the passenger immediately jumped out of the car. They stated that they needed to buy gas and both needed to use the restroom. Trooper Goines patted down each defendant and allowed them to use the restroom one at a time.

Trooper Goines testified that he asked the defendant for permission to look at his gas gauge and that the defendant consented. When Trooper Goines opened the car door to look at the gauge, he saw a 24- by 12-inch package wrapped tightly in opaque green plastic shrink

2

wrap. The package was lying on the driver's seat. He immediately suspected that it contained narcotics. He called for backup, placed both defendants under arrest, and searched the defendant's car. The search did not turn up any additional contraband. Sergeant Steven Lawrence arrived on the scene and pierced the side of the package, revealing a leafy substance the officers suspected to be cannabis.

After his testimony, Trooper Goines left the courtroom, and the attorneys for the defendants and the State began their arguments. The State argued that once Trooper Goines saw the package in plain view on the front seat of the defendant's car, it was "rather obvious" to him that the package contained narcotics. In response, the defendants argued that there was no evidence to support the officer's suspicion that the package contained drugs. They argued that there was no suspicious behavior on the part of either defendant to support this conclusion and that Trooper Goines' search of the car and pat-down searches of both defendants yielded no evidence of any additional contraband or drug paraphernalia. The court then made the following observation: "I didn't hear any testimony from the trooper that he even had any previous drug experience, any previous experience that would lead him to believe that the bundle was anything about drugs." The court continued the hearing to allow the parties time to address the applicability of *Arizona v. Gant*, 556 U.S. ____, 173 L. Ed. 2d 485, 129 S. Ct. 1710 (2009). That case, which was decided five days after the search and seizure at issue in this case occurred, placed limits on the ability of officers to search a vehicle incident to an arrest. *Gant*, 556 U.S. at ____, 173 L. Ed. 2d at 501, 129 S. Ct. at 1723-24. Although relevant at the trial court level, the case is not relevant to the issues raised in this appeal. The defendant concedes that Trooper Goines discovered the package after being given consent to open the door to look at the gas gauge and that the search of the vehicle did not turn up any other incriminating evidence.

A few days after the first hearing, the State filed a motion to strike the defendants'

3

motions to quash arrest and a motion to reopen direct examination and allow additional witnesses. The defendants promptly filed an objection to the State's motions. The court held a second hearing to address these pending motions. The court denied the motion to strike, finding that it was untimely and moot. The court found that it had never closed the evidence in the first hearing; therefore, over the defendants' objections, the court ruled that the State would be permitted to present additional evidence without the need to reopen the case.

The court then held a third hearing in the matter. Trooper Goines again took the stand. This time, he testified that he asked the passenger about the package and that the passenger told him that the package did not belong to him and that he did not know what was in the package or how it got there. Trooper Goines also testified that he questioned both defendants about where they were going. The defendant, who was the driver, told him that they were going to Indianapolis. The passenger said that he was just going along for the ride and did not know where they were going.

Trooper Goines further testified that he immediately suspected that the package contained some type of narcotics because of the way it was wrapped as well as the defendants' behavior. He explained that he had some training in drug interdiction, from which he had learned that plastic wrap was used by drug traffickers to conceal narcotics. He further explained that although many drivers appear to be nervous when stopped for routine traffic violations, both defendants here acted more nervous than the typical motorist. Trooper Goines acknowledged that he did not know what type of narcotic he could expect to find in the package. He suspected it contained cocaine because he ran a warrant check on each defendant and learned that each had a history of cocaine trafficking. He also acknowledged that his search of the car did not turn up any additional evidence of contraband.

Sergeant Steven Lawrence, the officer who pierced the package, also testified for the State. He testified that he had taken five different one-week training seminars dealing with

4

drug interdiction, including one seminar specifically geared towards interdiction on the interstate. In addition, he had attended shorter one-day seminars on the topic. He explained that narcotics are generally transported in shrink-wrapped packages, such as the one found in the defendant's car, to make it harder to detect. The human nose cannot smell the narcotics through the airtight wrap, and because opaque wrap is used, the drugs themselves are not visible, either. Sergeant Lawrence testified that he had been involved in 8 to 10 previous stops involving packages containing narcotics. Although the wrap was black rather than green in most of the stops, the packages were otherwise identical to the one Trooper Goines found in the defendant's car. He testified that the type of packaging used here was never used for anything other than illegal drugs.

Sergeant Lawrence went on to explain that he suspected not only that the package contained narcotics but that it contained cannabis. He explained that the packaging for different types of drugs was distinctive–for example, cocaine was ordinarily wrapped in small brick-shaped packs that could easily be concealed in the door pocket of a vehicle, while cannabis was ordinarily wrapped in larger packages such as the one involved here. He testified that two things led him to question whether the package might contain something other than cannabis–first, he knew from Trooper Goines that both defendants had a history of cocaine trafficking, and second, ordinarily with a package that large it was possible to smell the faint aroma of cannabis in spite of the plastic wrap, but he could not smell it. Finally, Sergeant Lawrence testified that he pierced the side of the package at the scene so that he could tell the drug interdiction unit what type of narcotic they had found before they arrived.

The court found that Trooper Goines had consent to look at the gas gauge. This required him to open the door to the car, which in turn led to the discovery of the package in plain view. This gave him probable cause to arrest the defendant and search the car. The

5

court further found that the officers' training and experience in drug detection, combined with their knowledge of the defendants' prior history of drug trafficking and the nervousness displayed by both men during the stop, gave Sergeant Lawrence probable cause to open the package at the scene. The court denied the motion to suppress. After a stipulated bench trial, the defendant was convicted of unlawful possession of cannabis, and the State dropped the other charges. The defendant then filed the instant appeal.

A ruling on a motion to suppress evidence presents mixed questions of fact and law. On appeal, we will reverse the trial court's findings of fact only if they are against the manifest weight of the evidence. However, we will consider *de novo* "the ultimate question of whether the evidence should be suppressed." *People v. McDonough*, 239 Ill. 2d 260, 266, 940 N.E.2d 1100, 1105 (2010).

The fourth amendment does not protect citizens from any and all searches and seizures; it prohibits only those searches and seizures that are unreasonable. *People v. Hall*, 352 Ill. App. 3d 537, 545, 816 N.E.2d 703, 710 (2004). Generally, this requires a warrant supported by probable cause. However, there are exceptions to the requirement of a warrant. *People v. Jones*, 215 Ill. 2d 261, 269, 830 N.E.2d 541, 548 (2005). "The central requirement of the fourth amendment is reasonableness." *Jones*, 215 Ill. 2d at 268, 830 N.E.2d at 548. Two exceptions are relevant to this appeal. First, officers may properly conduct a search without a warrant if they are given consent. *People v. Davis*, 398 Ill. App. 3d 940, 956, 924 N.E.2d 67, 82 (2010). Second, under the plain view doctrine, an officer may seize an object without a warrant if (1) the officer is lawfully in the place where he sees the object in plain view, (2) the officer has a lawful right of access to the object, and (3) the incriminating nature of the object is "immediately apparent." *Jones*, 215 Ill. 2d at 271-72, 830 N.E.2d at 550. The incriminating nature is immediately apparent if the officer has probable cause to believe that the object is evidence of a crime without searching further. *Jones*, 215 Ill. 2d

at 272, 830 N.E.2d at 550.

Here, there is no real dispute that the defendant gave Trooper Goines consent to enter his car to look at his gas gauge. Thus, there is no question that he was lawfully in the vehicle when he saw the package in plain view or that he had lawful access to it. What is at issue is whether he had probable cause to believe that the package contained illegal drugs without conducting a further search.

The defendant argues that Trooper Goines lacked probable cause to arrest the defendant or seize the package because (1) the package was not distinctive enough to make it obvious that it contained narcotics and (2) the defendant's actions were not suspicious. We disagree on both counts.

The defendant argues that the package "could have contained anything." Trooper Goines acknowledged that he did not know with certainty that the package contained narcotics; however, probable cause to believe that a package contains contraband does not require absolute certainty. *Texas v. Brown*, 460 U.S. 730, 742, 75 L. Ed. 2d 502, 514, 103 S. Ct. 1535, 1543 (1983); *Jones*, 215 Ill. 2d at 277, 830 N.E.2d at 553. Trooper Goines testified that he had seen similar packages on at least five previous occasions and that each one had contained narcotics. As previously noted, he also testified that he had at least some training in drug interdiction, although he did not provide much detail.

Moreover, in determining whether Trooper Goines had probable cause to believe that the package contained illegal drugs, we must consider all the circumstances known to him at the time. See *People v. Holmes*, 104 Ill. App. 3d 1049, 1053-54, 433 N.E.2d 1027, 1031 (1982). Here, Trooper Goines' suspicion that the package contained narcotics was heightened due to what he considered to be suspicious behavior by the defendant and his passenger. In arguing that this behavior did not give rise to probable cause, the defendant focuses on two observations. He notes that Trooper Goines testified that the defendant and

7

his passenger acted nervous during the encounter and that he believed they were taking evasive measures as he followed the vehicle on the exit ramp. The defendant argues that there are innocent explanations for both of these behaviors. He points out that anyone might be nervous during a traffic stop and that the defendant likely turned left after beginning to turn right at the top of the ramp because he did not know where the gas station was. We note that Trooper Goines acknowledged both of these possibilities in his testimony. Although he testified that they appeared to be trying to avoid him when the vehicle began to turn right but turned left instead, he also acknowledged that it was apparent they did not know where they were going. Trooper Goines also indicated that most motorists are nervous during traffic stops. However, he specifically testified that both the defendant and his passenger seemed more nervous than most people he encounters making routine traffic stops. Moreover, these are not the only relevant circumstances Trooper Goines considered. As previously noted, the passenger told Trooper Goines that he did not know where they were going, what was in the package, or how the package got in the car. In addition, a warrant check revealed that both the defendant and his passenger had prior drug charges. We believe that the combination of *all* of these circumstances–including Trooper Goines' knowledge that the package was the type of package used to transport drugs–gave rise to probable cause to arrest the defendants and seize the package.

This does not end our inquiry, however. Even when the plain view doctrine supports the warrantless seizure of a package or container, it does not always follow that the contents of the package or container may be searched without a warrant, as was done here. *Jones*, 215 Ill. 2d at 278, 830 N.E.2d at 554. If the contents of the properly seized package "are a forgone conclusion," police officers may properly search the package without obtaining a warrant. *Jones*, 215 Ill. 2d at 279, 830 N.E.2d at 554. The contents of a package may be a foregone conclusion if the package is transparent or open or "when its 'distinctive

8

configuration proclaims its contents.' " *Jones*, 215 Ill. 2d at 279, 830 N.E.2d at 554 (quoting *People v. Williams*, 41 F.3d 192, 197 (4th Cir. 1994)). Applying this principle to the instant case, we find that Sergeant Lawrence was justified in piercing the side of the package.

As previously discussed, both Trooper Goines and Sergeant Lawrence testified to prior training and experience in drug interdictions. Although Goines gave little specific testimony related to his training, Sergeant Lawrence was the officer who actually made the decision to pierce the package, and he testified that he had attended at least five different weeklong training seminars in addition to several one-day seminars. He further testified that, at these seminars, participants were given the opportunity to see and handle various examples of different types of drug packages. In addition, both officers testified that they had been involved in multiple prior drug interdictions and that each time they had encountered a package similar to the one found in the defendant's car, it had contained narcotics. As the defendant acknowledges, the officers may rely on this training and experience. *Jones*, 215 Ill. 2d at 274, 830 N.E.2d at 551.

The facts before us are similar to those present in *Jones*. There, an officer asked a driver to produce his driver's license during a routine traffic stop. After the driver handed his license to the officer, his front shirt pocket opened, revealing a small wooden box. *Jones*, 215 Ill. 2d at 264, 830 N.E.2d at 546. Due to his training and experience in drug interdiction, the officer recognized the box as a "one-hitter" box, which is commonly used to hold cannabis. The officer opened the box and found a pipe and some cannabis inside. *Jones*, 215 Ill. 2d at 264, 830 N.E.2d at 546.

The officer testified that he had received a one-week course in drug detection. During this training course, the officer had the opportunity to examine exhibits of various types of drug paraphernalia, including a one-hitter box. *Jones*, 215 Ill. 2d at 275, 830 N.E.2d at 551. He also testified that he had encountered one-hitter boxes 24 previous times and that every

9

time he encountered one, it contained drugs. He had never seen this type of box used for any other purpose. *Jones*, 215 Ill. 2d at 275, 830 N.E.2d at 551-52.

In upholding the validity of the search of the contents of the box, the supreme court noted that it might not have been obvious to a civilian that Jones's one-hitter box was an item of drug paraphernalia almost certain to contain marijuana. The court concluded, however, that "taking into account [the officer's] training and experience," the one-hitter box was distinctive enough to "proclaim[] its contents." *Jones*, 215 Ill. 2d at 282, 830 N.E.2d at 556.

Here, similarly, the training and experience of both officers, particularly Sergeant Lawrence, led them to expect with near certainty that the package would contain illegal drugs. Both officers testified that every time they had encountered a similar package, it had contained narcotics. Sergeant Lawrence, who had encountered similar packages on 10 prior occasions and testified to fairly extensive training in drug detection, stated that he had never seen anything other than drugs packaged in this distinctive manner. He testified regarding the reasons that drug traffickers use opaque plastic wrap to avoid detection. He even testified that the configuration and size of the package revealed that it almost certainly contained cannabis. The defendant contends that the package in this case is not as distinctive as the one-hitter box in *Jones*. However, we find this contention to be contradicted by the testimony of the officers. In light of this training and experience, we find that Sergeant Lawrence's near certainty that the package would contain drugs justified his act of piercing the package at the scene without first obtaining a warrant.

Finally, we acknowledge that we reach a different conclusion than the court in *People v. Penny*, 188 Ill. App. 3d 499, 544 N.E.2d 1015 (1989), a case that is factually similar to the case before us. There, two Chicago police officers stopped a motorist because his registration sticker had expired. *Penny*, 188 Ill. App. 3d at 500, 544 N.E.2d at 1015. When they asked the driver to produce his driver's license, they noticed that his hands shook.

10

*Penny*, 188 Ill. App. 3d at 500, 544 N.E.2d at 1015-16. One officer looked into the vehicle and saw a small, bricklike package wrapped in opaque brown plastic. (One of the officers in *Penny* testified that the package looked " 'like a kilo of cocaine' " and felt " 'like a brick.' " *Penny*, 188 Ill. App. 3d at 500, 544 N.E.2d at 1016. We note that in this case, Sergeant Lawrence testified that cocaine is ordinarily packaged in this bricklike configuration.) The officer removed the package from the car, pierced it with a knife, and discovered that it contained a white powder. Subsequent testing revealed that the powder was cocaine. *Penny*, 188 Ill. App. 3d at 500, 544 N.E.2d at 1016.

There, the trial court granted the defendant's motion to suppress, finding that the officers " 'had nothing more than mere suspicion.' " *Penny*, 188 Ill. App. 3d at 501, 544 N.E.2d at 1016. The First District Appellate Court affirmed that ruling. *Penny*, 188 Ill. App. 3d at 505, 544 N.E.2d at 1019. We do not find that the same result is warranted here. Even if we were obliged to follow a 20-year-old decision of a different district of the appellate court, we find *Penny* distinguishable from the instant case for two key reasons.

First, the officer who testified in *Penny* stated only that, based on his experience, he believed that the package " 'looked like a kilo of cocaine.' " *Penny*, 188 Ill. App. 3d at 503, 544 N.E.2d at 1017. Unlike Sergeant Lawrence, he did not testify that the package was distinctive, and he did not provide any testimony outlining what type of training and experience he had in drug interdiction. Although the officers in *Penny* might well have had more than a mere suspicion that the package contained cocaine, they did not provide the court with a factual basis to allow the court to reach this conclusion. Here, by contrast, Sergeant Lawrence testified that he had extensive knowledge and training in drug interdiction and that the type of packaging used here was distinctive and typically used by drug traffickers to conceal the contents. A fact in point was that Sergeant Lawrence had personal experience in 8 to 10 prior cases of similar packages, all of which contained narcotics, and that this type

11

of package was not used for anything other than illegal drugs.

Second, in *Penny* the only additional circumstance known to the arresting officers was the fact that the driver's hands were shaking when he produced his license. *Penny*, 188 Ill. App. 3d at 503, 544 N.E.2d at 1017. As the First District pointed out, nervousness alone is not enough to give rise to suspicion, especially during a routine traffic stop when many drivers are likely to be nervous. *Penny*, 188 Ill. App. 3d at 503, 544 N.E.2d at 1017. Here, by contrast, the officers were aware that both the defendant and his passenger had prior drug trafficking arrests and that they gave conflicting answers when asked their destination. We thus find the instant case distinguishable from *Penny* and decline to follow the decision in that case.

We conclude that the trial court correctly denied the motion to suppress evidence. Accordingly, we affirm the defendant's conviction.


Affirmed.

NO. 5-09-0563

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, ) | | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Union County. |
| | ) | |
| v. | ) | No. 09-CF-55 |
| | ) | |
| CEDRIC J. SINEGAL, | ) | Honorable |
| | ) | Mark M. Boie, |
| Defendant-Appellant. | ) | Judge, presiding. |

| | |
|---|---|
| **Rule 23 Order Filed**: | March 30, 2011 |
| **Motion to Publish Granted**: | May 5, 2011 |
| **Opinion Filed**: | May 5, 2011 |

| | |
|---|---|
| **Justices**: | Honorable Melissa A. Chapman, P.J. |
| | |
| | Honorable Thomas M. Welch, J., and |
| | Honorable James K. Donovan, J., |
| | Concur |

| | |
|---|---|
| **Attorneys for Appellant** | Michael J. Pelletier, State Appellate Defender, Johannah B. Weber, Deputy Defender, E. Joyce Randolph, Assistant Appellate Defender, Office of the State Appellate Defender, 909 Water Tower Circle, Mt. Vernon, IL 62864 |
| **Attorneys for Appellee** | Hon. Tyler R. Edmonds, State's Attorney, Union County Courthouse, 309 W. Market Street, Jonesboro, IL 62952; Patrick Delfino, Director, Stephen E. Norris, Deputy Director, Timothy James Ting, Staff Attorney, Office of the State's Attorneys Appellate Prosecutor, Fifth District Office, 730 E. Illinois Hwy 15, Suite 2, P.O. Box 2249, Mt. Vernon, IL 62864 |