2022 IL App (1st) 210846

No. 1-21-0846

Opinion filed September 8, 2022

Fourth Division

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 20 CR 6951 |
| | ) | |
| KEON RANDALL, | ) | Honorable |
| | ) | Vincent M. Gaughan, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

PRESIDING JUSTICE LAMPKIN delivered the judgment of the court, with opinion.
Justices Rochford and Martin concurred in the judgment and opinion.

**OPINION**

¶ 1     Defendant, Keon Randall, appeals his conviction for unlawful possession of a weapon by

a felon. On appeal, defendant argues that the trial court erred in denying his motion to suppress

evidence and that the State failed to prove his guilt beyond a reasonable doubt.

¶ 2     For the reasons that follow, we reverse the judgment of the circuit court.

¶ 3                                    I. BACKGROUND

¶ 4     Defendant was charged by information with one count of armed habitual criminal (720

ILCS 5/24-1.7(a) (West 2020)), three counts of unlawful possession of a weapon by a felon (*id.*

§ 24-1.1(a)), and two counts of aggravated unlawful use of a weapon (*id.* § 24-1.6(a)(1)). The charges stemmed from a traffic stop wherein a firearm was located under the passenger seat of the vehicle that defendant was driving.

¶ 5    Prior to trial, defendant filed a motion to suppress evidence. Defendant argued that the search of his vehicle was not a valid search incident to arrest as he had not been arrested when the search was conducted. Defendant also argued that there was no "independent probable cause" to support the warrantless search. At the hearing on the motion, the following evidence was adduced.

¶ 6    Chicago police officer Camelia Clark testified that she was patrolling with her partner, Officer Demetrius Prothro, in an unmarked police car around 7:15 p.m. on June 21, 2020. Officer Clark observed a green Toyota automobile with a missing front license plate. Defendant was the driver of the green Toyota. Officer Clark and her partner were traveling in the opposite direction of defendant, so Officer Prothro made a U-turn. Defendant's vehicle then entered an intersection while the light was red, impeding traffic from proceeding through the intersection.

¶ 7    Officer Clark testified that she could see through defendant's rear window and saw a driver and front-seat passenger in the vehicle. Officer Clark saw defendant make furtive movements toward the front passenger seat as if he was trying to conceal something. Officer Clark admitted that she could not see defendant's hands, what he was touching, or whether he was moving anything. Officer Clark made these observations from "50 feet or less" away. Defendant's vehicle then drove through the red light and the officers activated their lights and siren.

¶ 8    As defendant stopped, his vehicle "jumped the curb." Officer Clark then approached the passenger side, and Officer Prothro approached the driver side. Defendant was asked to exit and, as he did so, the vehicle began to move forward because defendant did not put it into park. Both

defendant and passenger Jada Dalton exited the vehicle and were escorted to the area behind defendant's vehicle. Officer Clark described defendant as nervous as he was interacting with Officer Prothro.

¶ 9    Officer Clark then searched the vehicle starting with the passenger side because that is where she saw defendant making furtive movements towards. Officer Clark completed the initial search of the vehicle without finding anything. Officer Clark returned to the patrol vehicle to run defendant's name. Officer Clark learned that defendant was "not in compliance with registration." Officer Clark also asked Dalton if there were any weapons in the car, and Dalton hesitated, responding, "Ah, I don't think so."

¶ 10    Officer Clark then returned to search the car for weapons because it was important to secure the car. Officer Clark, now using a flashlight, found a firearm under the front passenger seat. The firearm was a loaded .40-caliber Glock.

¶ 11    The defense admitted a video of Officer Clark's body camera from the stop. The video in large part corroborated Officer Clark's testimony. The video shows that defendant's front passenger tire goes onto the curb as he stops his vehicle. Defendant's car moved slightly forward as he started to exit the vehicle, and then defendant placed the vehicle in park. Defendant was immediately asked to exit the car. Defendant was frisked and placed into handcuffs within seconds of getting out of the car. Both defendant and Dalton were then taken to the rear of the vehicle, near the patrol car, where Dalton was also frisked.

¶ 12    Officer Clark then searched the vehicle. Officer Clark started with the passenger side. Officer Clark opened both the middle console and the glove compartment. Officer Clark then looked through Dalton's clutch purse, which was laying on the front passenger seat. Officer Clark

searched under the front passenger seat. Officer Clark popped out the automatic window control module and searched inside the door panel. Officer Clark then proceeded to the driver's side, where she performed all of the same searches as on the passenger side. Officer Clark then entered the back seat area, where she searched the floorboard. Officer Clark also attempted to pull the back seat up. Officer Clark searched a shoe box in the back seat. This initial search turned up no contraband.

¶ 13    Officer Clark then returned to the squad car with defendant's state identification to run defendant's name. Officer Clark was informed through dispatch that defendant's identification was expired. Defendant was also not compliant with registration that is required due to his status as a convicted gun felon.

¶ 14    Officer Clark then ran Dalton's name through the computer. A discussion ensued between Officer Clark and Dalton about whether Dalton is "concealed carry" and whether Dalton had a firearm. Dalton was unsure about her concealed carry status, but she stated that she did not have a weapon on her at the time. Officer Clark then asked whether there was a weapon in the vehicle to which Dalton appeared to hesitate before responding, "no." Officer Clark asked Dalton why she had to think about it. Dalton then asked defendant whether he had a weapon in the vehicle, and defendant shook his head no.

¶ 15    Officer Clark retrieved her flashlight and stated that she wanted to check one more thing. Officer Clark returned to the driver's side of the vehicle and opened the trunk by pulling the lever near the driver's seat. Officer Clark searched the trunk area and the area where the spare tire is kept. Officer Clark also looked through two bags in the trunk. Officer Clark then searched the front passenger area again, this time finding a firearm under the passenger seat. Officer Clark secured

the weapon by removing the magazine, clearing the weapon, and placing the weapon in the back of the patrol car.

¶ 16    The defense rested, and the State rested without presenting any evidence.

¶ 17    The defense argued that the search was not justified pursuant to *Arizona v. Gant*, 556 U.S. 332 (2009), because neither defendant nor Dalton were within reaching distance of the passenger area when the search occurred. Trial counsel continued that the bases for the stop, a missing front license plate and obstructing the intersection, were both unrelated to a search for a firearm in that area of the vehicle. Trial counsel concluded that there was "nothing here to justify the retrieval of the gun."

¶ 18    The State pointed to the following facts to argue that probable cause existed to search the vehicle for a firearm: defendant's furtive movements toward the front passenger seat, defendant's "nervous" and "suspicious" behavior in jumping the curb and attempting to exit the vehicle while it was not in park, defendant's lack of a driver's license and his status as a gun offender, and Dalton's evasive answers about whether there was a weapon in the vehicle.

¶ 19    The trial court found Officer Clark's initial "thorough" search of the vehicle illegal. The trial court downplayed the evidence of nervousness when it stated that "nervousness" might be a "normal reaction for an abnormal situation" when an individual is stopped by the police and asked to exit their vehicle. As to the furtive movements, the trial court pointed out that no one could see what was happening at the bottom of the front passenger seat. The trial court stated that "common sense tells us" that all Officer Clark could say is that she saw defendant make a movement towards the lower quadrant of the passenger seat. Based on these facts, and that the stop was for a minor traffic violation, the trial court concluded that probable cause did not support the initial search.

¶ 20    The trial court held that the second search was supported by probable cause. The trial court noted Officer Clark's discovery that defendant violated the city ordinance[1] of failing to register after having a prior conviction for a firearm offense. The trial court then continued that "loading back up all the reasonable facts, one, the nervousness; two, the move over by the passenger side," there was probable cause to search for a weapon. The trial court denied the motion to suppress.

¶ 21    Prior to trial, the State nol-prossed all but count II, which charged the offense of unlawful use or possession of a weapon by a felon in violation of section of 24-1.1(a) of the Criminal Code of 2012 (720 ILCS 5/24-1.1(a) (West 2020)), in that defendant knowingly possessed a firearm on or about his person after having previously been convicted of the felony offense of unlawful use of a weapon by a felon. The parties agreed that portions of the body camera would be played without audio due to the "rules of evidence," such as the rule against hearsay. The trial court also granted the State's motion *in limine* to introduce a certified copy of the vehicle registration showing that defendant was the registered owner of the vehicle he was driving at the time of the stop.

¶ 22    At trial, Officer Clark's testimony largely mirrored her testimony from the motion to suppress hearing. Officer Clark identified defendant as the driver of the stopped vehicle. Officer Clark could see inside defendant's vehicle as she was directly behind defendant's vehicle. Officer Clark saw defendant's "upper shoulder going towards the bottom front passenger's seat." Officer Clark added that the front passenger was not moving while defendant made these movements.

---

[1]While not expressly stated by the trial court or the parties below, the ordinance at issue appears to be the City of Chicago's Gun Offender Registration Ordinance (Ordinance). The Ordinance requires any person to register with the Chicago Police Department who (1) resides within Chicago and (2) is convicted of a gun offense or is released from a state, federal, or local correctional center for incarceration for a gun offense. Chicago Municipal Code § 8-26-020 (amended Mar. 13, 2013).

Officer Clark testified that defendant's car stopped in the middle of the intersection during a red light, impeding traffic. When defendant stopped his vehicle, the vehicle jumped the curb. Officer Clark then searched the vehicle twice, ultimately finding a firearm under the front passenger's seat. Officer Clark identified the firearm, People's exhibit 1; the magazine, People's exhibit 2; and a live round of ammunition, People's exhibit 3.

¶ 23    The State then admitted Officer Clark's body camera which showed that Officer Clark located the firearm under the front passenger seat. The video had no audio and showed significantly less (only 1 minute and 15 seconds) of the interaction compared to the video admitted during the suppression motion hearing (over 27 minutes).

¶ 24    On cross-examination, Officer Clark agreed that she never saw defendant touch a gun. Officer Clark could not say how long Dalton had been in the vehicle or whether she had been alone in the vehicle at any point that day. Officer Clark agreed that Dalton hesitated at times when answering questions. Officer Clark could not say how long the firearm had been under the seat or who had placed the firearm there. The defense also admitted a still photograph from Officer Clark's body camera which showed that defendant's back window was tinted.

¶ 25    Chicago police officer Demetrius Prothro testified that he was driving the unmarked squad car that performed the traffic stop of defendant's vehicle. Officer Prothro testified that, after making the U-turn, his squad car was directly behind defendant's vehicle. Officer Prothro testified that he observed defendant make furtive movements in a "downward motion towards the front seat of the passenger's side." Officer Prothro added that defendant's vehicle was in the turn lane in the middle of the intersection while the light was red. When the light turned green, defendant proceeded straight instead of making the left turn. Defendant then moved to the right before his

vehicle jumped the curb and came to a stop. Because defendant was unable to produce a driver's license, Officer Prothro detained him for further investigation.

¶ 26    The State then admitted a certified copy of the registration showing that defendant was the owner of the stopped vehicle. The parties stipulated that defendant had previously been convicted of a qualifying felony offense. The State rested, and the trial court denied defendant's motion for a directed verdict. The defense then rested without presenting evidence.

¶ 27    The jury found defendant guilty. Defendant filed a motion for a new trial, arguing relevant to this appeal that the State failed to prove his guilt beyond a reasonable doubt and that the trial court erred in denying his motion to suppress evidence. The trial court denied defendant's motion for a new trial. The trial court sentenced defendant to eight years and six months' imprisonment. Defendant was sentenced on July 13, 2021, and he filed a motion to reconsider sentence, which was denied, and a notice of appeal on the same date. This is a direct appeal of the trial court's judgment.

¶ 28                                    II. ANALYSIS

¶ 29    Defendant first argues that the trial court erred when it denied his motion to suppress evidence. Defendant argues that as a threshold matter the search was not justified incident to arrest because neither defendant nor Dalton were within reaching distance of the passenger area when Officer Clark found the firearm. Defendant continues that evidence of "furtive movements" has been "repeatedly discounted" by Illinois courts and that the officer's testimony regarding the movements were unreliable based on the distance between the vehicles and the tinted windows. Defendant adds that the municipal violation for failure to register as a gun offender did not add enough to establish probable cause and that the violation could not be used as a pretext to search

the vehicle. Defendant asks this court to reverse his conviction outright because the State could not prove his guilt without the illegally obtained firearm.

¶ 30     The State responds that defendant's repeated furtive movements, his nervous demeanor and behavior, and his criminal history all provided the officers with probable cause to believe that his vehicle contained evidence of criminal activity. The State argues that, while each piece of evidence standing alone did not constitute probable cause, the evidence, when viewed collectively, did support such a finding. The State concludes that the search was supported by probable cause and, as such, was proper pursuant to the automobile exception to the warrant requirement.

¶ 31     On a motion to suppress, the defendant bears the burden of establishing a "*prima facie* case that the evidence was obtained by an illegal search or seizure." *People v. Gipson*, 203 Ill. 2d 298, 306-07 (2003). "Once the defendant makes out a *prima facie* case that a [search] was unreasonable, the burden shifts to the State to come forward with evidence to rebut." *People v. Bass*, 2021 IL 125434, ¶ 21. "However, the ultimate burden of proof remains with the defendant." *Gipson*, 203 Ill. 2d at 307.

¶ 32     "In reviewing a circuit court's ruling on a motion to suppress evidence on appeal, this court applies the two-part standard of review announced by the United States Supreme Court in *Ornelas v. United States*, 517 U.S. 690, 699 (1996)." *People v. Aljohani*, 2022 IL 127037, ¶ 28. First, a reviewing court gives great deference to a trial court's findings of fact and will reverse those findings only if they are against the manifest weight of the evidence. *People v. Luedemann*, 222 Ill. 2d 530, 542 (2006). "A finding is against the manifest weight of the evidence when the opposite conclusion is clearly evident or if the finding itself is unreasonable, arbitrary, or not based on the evidence presented." *In re Daniel G.*, 2021 IL App (1st) 210640, ¶ 54.

¶ 33    Second, a reviewing court "remains free to undertake its own assessment of the facts in relation to the issues and may draw its own conclusions when deciding what relief should be granted." *Luedemann*, 222 Ill. 2d at 542. Accordingly, we review the trial court's legal ruling as to whether suppression is warranted *de novo. Id.* at 542-43. *De novo* consideration means we perform the same analysis that a trial judge would perform. *People v. Begay*, 2018 IL App (1st) 150446, ¶ 34.

¶ 34    The fourth amendment guarantees the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const., amend. IV. "A search conducted without prior approval of a judge or magistrate is *per se* unreasonable under the fourth amendment, subject only to a few specific and well-defined exceptions." *People v. Bridgewater*, 235 Ill. 2d 85, 93 (2009). The only exception to the warrant requirement at issue in this case is the automobile exception.[2] "Under the automobile exception, law enforcement officers may undertake a warrantless search of a vehicle if there is probable cause to believe that the automobile contains evidence of criminal activity that the officers are entitled to seize." *People v. James*, 163 Ill. 2d 302, 312 (1994).

¶ 35    "To establish probable cause, it must be shown that the totality of the facts and circumstances known to the officer at the time of the search would justify a reasonable person in believing that the automobile contains contraband or evidence of criminal activity." *People v. Hill*, 2020 IL 124595, ¶ 23. It does not "demand any showing that such a belief be correct or more likely

_____

[2]Both parties agree that the search incident to arrest exception does not apply here. The exception applies "only if the arrestee is within reaching distance of the passenger compartment at the time of the search or it is reasonable to believe the vehicle contains evidence of the offense of arrest." *Gant*, 556 U.S. at 351. Because those circumstances are not present in this case, we agree with the parties and need not address the search incident to arrest exception further.

true than false." *Texas v. Brown*, 460 U.S. 730, 742 (1983). "Probable cause is a practical, nontechnical concept that deals with the factual and practical considerations of everyday life on which reasonable and prudent persons—not legal technicians—act." *People v. Jones*, 215 Ill. 2d 261, 274 (2005). "Probable cause is a fluid concept that turns on the assessment of probabilities in particular factual contexts; it is not readily, or usefully, reduced to a neat set of legal rules." *Id.* "As a corollary, moreover, of the rule that the police may rely on the totality of facts available to them in establishing probable cause, they also may not disregard facts tending to dissipate probable cause." *Bigford v. Taylor*, 834 F.2d 1213, 1218 (5th Cir. 1988).

¶ 36    We start with an analysis of the initial search of defendant's vehicle, which the trial court found was both "thorough" and "illegal." We do so in recognition of the fact that the second search is the one at issue in this appeal. However, the facts leading up to the first search and the result of the first search play a large part in our conclusion that the officers lacked probable cause to conduct the second search.

¶ 37    The first search was supported in large part by defendant's alleged furtive movements toward the passenger area. Officer Clark observed these movements from approximately 50 feet or less away. Furtive movements standing alone, as defendant argues, are insufficient to establish probable cause under the automobile exception because they are often susceptible to an innocent explanation. See *People v. Smith*, 2015 IL App (1st) 131307, ¶¶ 29-36. Innocent explanations of furtive movements in reaction to an officer's attempt to stop a vehicle may include the driver's reach to the glove compartment for the vehicle's registration or to turn the radio down in expectation of a conversation with the officer. See *People v. Superior Court of Yolo County*, 478 P.2d 449, 458-59 (Cal. 1970). " '[T]o constitute probable cause for an arrest or search, a "furtive

gesture" such as a motorist's act of bending over inside his car must be invested with guilty significance either by specific information known to the officer or by additional suspicious circumstances observed by him.' " *People v. Collins*, 53 Ill. App. 3d 253, 255 (1977) (quoting *Gallik v. Superior Court of Santa Clara County*, 489 P.2d 573, 575 (Cal. 1971)).

¶ 38    In addition to the furtive movements, the State points to defendant's nervousness, which was shown by defendant's entering an intersection with a red light, his front passenger tire going up on the curb as he pulled over, and the fact that defendant began to exit the vehicle before placing it into park. Courts often treat nervousness in different ways. See, *e.g.*, *People v. Blake*, 268 Ill. App. 3d 737, 741 (1995) ("Merely appearing nervous at the approach of a police officer is not sufficiently suspicious conduct to justify probable cause."); *People v. Sinegal*, 409 Ill. App. 3d 1130, 1136 (2011) (considering an officer's testimony that the defendant and his passenger "seemed more nervous than most people he encounters making routine traffic stops"). We need not decide the import of the evidence of defendant's nervousness, the reason for which will become clear in a moment. We do note, however, that Officer Clark's testimony that defendant appeared nervous in his interactions with Officer Prothro is insignificant for a couple of reasons. First, the body camera video shows that defendant appears compliant and calm throughout the stop. Second, to the extent defendant was nervous, nervousness would be expected of any citizen, pulled over for a purported minor traffic infraction, who was removed from the car, handcuffed, and patted down within less than one minute and 30 seconds of the stop.

¶ 39    The trial court concluded that the first search, premised on defendant's furtive movements and nervousness, was illegal. The State, while not conceding the point, has not disputed the trial court's conclusion. We do not rely on the State's lack of argument on the trial court's conclusion

regarding the first stop, but we simply note the trial court's conclusion because much of the evidence that allegedly supported the second search was already present during the first search.

¶ 40    Our conclusion that Officer Clark lacked probable cause to conduct the second search rests in large part on the fact that the "thorough" first search uncovered no contraband. Our review of Officer Clark's body camera, which showed the entirety of the stop, leads us to conclude that Officer Clark searched every part of the car defendant could have reached from the driver's seat. Officer Clark searched the middle console, the glove compartment, Dalton's small clutch that was on the front seat, the area inside the passenger door under the power window control module, the compartment under the power window control module, the sides of the passenger seat, under the passenger seat, the floorboard in the back seat, a shoe box in the back seat, around the driver's seat, under the driver's seat, the area inside the driver's door under the power control module, as well as removing the power window control module. Officer Clark also searched the rear side driver's area of the vehicle. In its briefing, the State does not dispute that this initial search was "thorough." At oral argument, the State only challenged the trial court's conclusion that this was a "thorough" search by noting that it was done without a flashlight. However, our review of the body camera shows that there was a significant amount of sunlight illuminating the interior of the vehicle.

¶ 41    We agree with the trial court's factual finding that the initial search was "thorough." We conclude that Officer Clark's "thorough" initial search, which uncovered no contraband, served to dissipate the already meager modicum of probable cause established by defendant's alleged furtive movements and nervousness. See *People v. Pulido*, 2017 IL App (3d) 150215, ¶ 53 ("[W]hen the initial search of the vehicle on I-80 was fruitless, any probable cause dissipated and the officers no

longer had any authority to continue their search."); *Bigford*, 834 F.2d at 1218 (explaining that "the probable cause standard is not entirely toothless" and that police "may not disregard facts tending to dissipate probable cause"); 2 Wayne R. LaFave, Search and Seizure § 3.7(d) (6th ed. 2021) (explaining that even if probable cause originally existed, "it may have dissipated in light of intervening events, especially a prior search of the place for the very same objects now sought"). In other words, even if defendant's alleged furtive movements and apparent nervousness established a baseline level of reasonable belief that contraband would be found in the passenger area, that belief became unreasonable when Officer Clark's "thorough" search turned up no contraband.

¶ 42 We note that the case for dissipation is much stronger here than in *Pulido*, the holding of which was disagreed with by a separate panel of the Third District. Compare *Pulido*, 2017 IL App (3d) 150215, ¶ 53 (holding that probable cause dissipated where an initial search failed to uncover narcotics despite a narcotic canine's positive alert and evidence that defendant had engaged in a controlled narcotics exchange near the searched minivan), with *People v. Varnauskas*, 2018 IL App (3d) 150654, ¶ 35 (declining to follow *Pulido* and instead concluding that probable cause had not "dissipated just because the drugs were so well hidden and certain surrounding conditions made completing a thorough roadside search of the vehicle impractical"). We only point out the distinction between *Pulido* and *Varnauskas* to recognize the division in the Third District on whether probable cause based on a positive canine alert dissipates after an initial search is unfruitful. Here, it suffices to say, none of the facts supporting the initial search are as convincing as a positive narcotics alert paired with other evidence pointing to drug trafficking. Also, the most compelling fact in favor of a belief that contraband may be found in the passenger area, defendant's

alleged furtive movements, also meant that any contraband could not have been effectively secreted away. Even if defendant could have physically leaned down and reached under the passenger seat, it is unlikely he could have done much more than slide any contraband in that area. He certainly could not have secreted contraband in any hidden compartment. Thus, once Officer Clark's initial "thorough" search was completed, any probable cause was severely diminished.

¶ 43    We also do not believe that any intervening facts served to rehabilitate probable cause in this case for a couple of reasons. See *State v. Zanter*, 535 N.W.2d 624, 633 (Minn. 1995) ("Once the police have engaged in an exhaustive search of a particular place, they cannot expect to re-search that area at a later date without providing the issuing judge with new information sufficient to indicate that items sought, but not found, during prior searches will now be found."). First, of the initial two facts, defendant's alleged furtive movements and nervousness, neither pointed to the presence of any specific type of contraband. Both facts are also susceptible to innocent explanations. This means that once Officer Clark thoroughly searched the passenger area and found nothing, the probable cause scale was essentially zeroed out.

¶ 44    Second, the discovery that defendant failed to register as a prior firearm offender said little to nothing about whether there was a weapon currently in his vehicle. Nor did Dalton's purported evasiveness in answering whether there was a weapon in the vehicle. Dalton was a passenger in a vehicle registered to defendant and, thus, would likely not be comfortable definitively stating to officers what was or what was not in the vehicle. When Dalton asked defendant whether there was a weapon in the vehicle, defendant shook his head no. Neither of these two facts, defendant's registration offense or Dalton's purported evasiveness, moved the needle enough to give the

officers a reasonable belief that defendant's vehicle contained contraband or evidence of criminal activity.

¶ 45    Moreover, Officer Clark's actions after learning this additional information refute the notion that she was considering the information in tandem with defendant's earlier furtive movements. The "scope of a warrantless search of an automobile" is "defined by the object of the search and the places in which there is probable cause to believe that it may be found." *United States v. Ross*, 456 U.S. 798, 824 (1982). Instead of immediately searching the area where defendant was purportedly leaning to, Officer Clark immediately searched the trunk of the vehicle. See *Wimberly v. Superior Court of San Bernardino County*, 547 P.2d 417, 424 (Cal. 1976) ("A search based on probable cause which reasonably only tends to support the inference that contraband or evidence will be found in the passenger compartment will be of intolerable intensity and scope if expended to include a closed trunk."). Officer Clark's actions, while not dispositive, tend to support the notion that the officers were on a fishing expedition as opposed to a targeted search based on probable cause.

¶ 46    In conclusion, we clarify what we are and are not holding. We are not deciding whether all the facts known to the officers—the furtive movements, nervousness, failure to register for a prior firearms offense, and Dalton's evasiveness—gave Officer Clark probable cause to search the vehicle. We are not deciding that issue because Officer Clark did not discover all of that evidence prior to searching the vehicle the first time. Officer Clark opted to search the vehicle immediately after defendant and Dalton were removed from the vehicle. That initial search was a break in the chain of events that served to severely diminish the evidentiary value of the officers' initial observations.

¶ 47    We are holding that Officer Clark's initial "thorough" search of the vehicle, which uncovered no contraband, dissipated any probable cause that was created by Officer Clark's observations of furtive movements and nervousness. We also hold that the discovery that defendant had failed to register as a prior firearm offender and Dalton's purported evasiveness did not serve to rehabilitate or otherwise independently establish probable cause to search the vehicle. Because there was not probable cause to conduct the second search of the vehicle, the trial court should have granted defendant's motion to suppress the firearm found under the passenger seat. Thus, we reverse the trial court's decision denying the motion to suppress. "Because the State cannot prevail on remand without the suppressed evidence, we reverse defendant's conviction and vacate his sentence." *People v. Freeman*, 2021 IL App (1st) 200053, ¶ 12.

¶ 48                               III. CONCLUSION

¶ 49    For the foregoing reasons, we reverse defendant's conviction for unlawful possession of a weapon by a felon and vacate his sentence.

¶ 50    Reversed.

---

***People v. Randall*, 2022 IL App (1st) 210846**

---

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 20-CR-6951; the Hon. Vincent M. Gaughan, Judge, presiding. |

---

| | |
|---|---|
| **Attorneys for Appellant:** | James E. Chadd, Douglas R. Hoff, and Yasaman Hannah Navai, of State Appellate Defender's Office, of Chicago, for appellant. |

---

| | |
|---|---|
| **Attorneys for Appellee:** | Kimberly M. Foxx, State's Attorney, of Chicago (Enrique Abraham, Noah Montague, and Erin K. Slattery, Assistant State's Attorneys, of counsel), for the People. |

---